1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| PHILIP SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>COUPANG, INC. and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. 23-1887<br><br>**AMENDED COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND** |

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

## INTRODUCTION

Plaintiff Philip Smith ("Plaintiff" or "Mr. Smith") brings this action against his former employer, Coupang, Inc. ("Coupang" or "Defendant"), as well as Does 1 through 10.  Mr. Smith, an experienced and highly respected attorney with expertise in corporate and financial crime compliance, after a deep vetting process, was hired by Coupang Global LLC (Coupang, Inc.'s predecessor company prior to the time Coupang. Inc. went public in March of 2021) in December 2020 to serve as a Senior Director and Head of Anti-Money Laundering Compliance in Seoul, Korea pursuant to an employment contract governed by California law.  Mr. Smith reported to the new Chief Compliance Officer, Ankit Dewan, who is not an attorney, and who had relatively limited experience in the kinds of financial crime compliance issues facing Coupang.

Shortly after Mr. Smith was hired, and Coupang went public, he became aware that Defendant had engaged in numerous transactions that violated the Securities Exchange Act of 1934 and related rules and regulations.  After raising these, protected complaints with Mr. Dewan regarding extremely serious violations of U.S. laws, rules, and regulations, Mr. Dewan attempted to suppress Mr. Smith's efforts, including specifically directing him to cease discussion of them.  Mr. Smith thereafter documented his complaints in a memo to the file, informed Mr. Dewan of the memo, and sought to escalate his concerns about legal violations to the Coupang legal department.

Instead of being thankful for Mr. Smith's meticulous and documented identification of illegal transactions (some of which Coupang ultimately reported on multiple public filings with the SEC), Defendants began a swift and abrupt campaign of retaliation against him, beginning with a forced administrative leave and a punitive investigation of his actions, which Coupang later attempted to paint as improper.  Coupang kept Mr. Smith employed and on administrative leave for nearly five months while it undertook the sham investigation and worse, refused to clarify the status of his employment, thus leaving Mr. Smith with no information about his future

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

or terms of his employment that were critical to his life planning.  After a protracted period of uncertainty during which Mr. Smith's retained counsel attempted to resolve the status of Mr. Smith's employment, Coupang terminated him on January 17, 2022.

Defendants' conduct violates the whistleblower retaliation provisions of the Sarbanes-Oxley Act and California Labor Code Section 1102.5, constitutes wrongful termination in violation of California or alternatively Washington common law, and is a breach of the implied covenant of good faith and fair dealing in violation of California common law.  By and through undersigned counsel, Plaintiff alleges upon personal knowledge or information and belief as noted herein, as follows:

## THE PARTIES

1.    Plaintiff Smith is currently a resident of the State of New York.  At all relevant times, Plaintiff was an employee within the meaning of the Sarbanes Oxley Act, 18 U.S.C. § 1514A, as well as under California common law, including Labor Code section 1102.5, and Washington common law.  At all relevant times, Plaintiff worked on assignment in the offices of Defendant's wholly owned subsidiary, Coupang, Corp., in Seoul, Korea, while he continued to be a U.S. taxpayer.

2.    Defendant Coupang, Inc. (formerly Coupang Global LLC, prior to initial public offering in March of 2021) is a Delaware Corporation with its headquarters and principal executive office in Seattle, Washington.  Coupang is an e-commerce retailer (known as "Korea's Amazon") with operations in the United States (including offices in California) and also operating through its wholly owned subsidiary Coupang, Corp. in Seoul, Korea, Japan, Taiwan, Singapore, and China.  Upon information and belief, Coupang, Inc. is directly involved in the management of its subsidiary, Coupang Corp. in Korea.

3.    The true names and capacities, whether individual, corporate, agent, representative, or otherwise of defendants named herein as Does 1 through 10, inclusive, are

AMENDED COMPLAINT
Case No. 23-1887
Page 3 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1   unknown to Plaintiff at this time, who therefore sues these defendants by fictitious names.

2   Plaintiff will seek leave of court to amend this complaint to allege their true names and capacities

3   once that information has been ascertained.  On information and belief, and based on such

4   information and belief, Plaintiff alleges that each of the fictitiously named defendants is

5   responsible in some manner, way or form and to some extent for acts, events and occurrences

6   alleged in this complaint.  Wherever appearing in this complaint, each and every reference to

7   "Defendants" is intended to be and shall be a reference to all defendants in this action, and each

8   of them, including but not limited to all fictitiously named defendants.

9                              **JURISDICTION AND VENUE**

10      4.      This court has original subject matter jurisdiction based on 28 U.S.C. § 1331, and

11   the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, *et seq*.  The first claim for relief arises directly under

12   federal law.

13      5.      This court also has diversity jurisdiction over this action pursuant to 28 U.S.C. §

14   1332.  The parties are citizens of different states and the amount in controversy exceeds $75,000.

15   Plaintiff is a resident of the state of New York.  Defendant Coupang, Inc. is a Delaware

16   corporation with U.S. headquarters in Seattle, Washington.

17      6.      This court has supplemental jurisdiction over the claims arising under California

18   and Washington law pursuant to 28 U.S.C. § 1367 because they arise from a common nucleus of

19   operative facts and are so interrelated to the federal question jurisdiction as to form part of the

20   same case or controversy under Article III of the United States Constitution.

21      7.      This Court has personal jurisdiction over Defendants because Coupang does

22   business in this District and because, upon information and belief, many of the decisions

23   complained of and giving rise to the claims alleged herein occurred in and emanated from

24   Coupang's headquarters in Seattle.

25

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

8.      Venue is proper under 28 USC §§ 1391(b)(1) and (b)(3) since Defendant Coupang, Inc. is headquartered in Seattle, Washington.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.      Plaintiff has exhausted all administrative remedies required to file this complaint. Within 180 days of learning that Coupang was terminating his employment, Mr. Smith timely filed a Sarbanes-Oxley retaliation complaint with the United States Department of Labor's Occupational Safety and Health Administration (OSHA) on July 15, 2022.  On December 7, 2022, Plaintiff timely appealed OSHA's preliminary findings on his charge.  In November 2023, Plaintiff withdrew his appeal before the Department of Labor had issued any final decision, and after 180 days had passed since he filed his complaint.  On November 13, 2023, Plaintiff received an email from an OSHA investigator informing him that all conditions had been met for Plaintiff to file a complaint in federal district court.  Accordingly, Plaintiff may bring this lawsuit in federal court pursuant to 18 U.S.C. § 1514A(b)(1)(B).

## FACTUAL ALLEGATIONS

10.      Plaintiff Philip Smith is a highly qualified and experienced corporate compliance attorney who moved his family including a school-aged child from the Netherlands to South Korea to take on an assignment role as a Senior Director and Head of Anti-Money Laundering Compliance at Coupang Global LLC, now Coupang, Inc.  Mr. Smith learned from his own assessment as well as conversations with Coupang's external auditors and advisors that *at the time he was hired*, Coupang was not in compliance with multiple U.S. laws, rules and regulations. Mr. Smith alerted Coupang's U.S. and international-based leadership, including leaders in the United States ("U.S."), to Coupang's violations of U.S. and Korean law, including repeat failures to disclose Coupang's prohibited transactions with the Iranian Government to the Securities and Exchange Commission (SEC) in violation of the U.S. Securities Exchange Act.  Shortly after he blew the whistle on Coupang's violations of U.S. and Korean law, Coupang retaliated against Mr.

AMENDED COMPLAINT
Case No. 23-1887
Page 5 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Smith in a myriad of ways, including shutting down his efforts to internally report violations, excluding him from communications with colleagues, groundlessly disparaging him, excluding him from direct communications with Coupang's U.S. general counsel's office, and placing him on an unexplained and protracted administrative leave in September 2021.  In January 2022, Coupang engaged in its ultimate act of retaliation, terminating Mr. Smith's employment (significantly, *without* cause) mere weeks before he was set to vest in a substantial portion of equity that he had been granted as part of his employment compensation package.

11.     Mr. Smith possesses superlative academic credentials and professional experience. He is a 2011 graduate of the University of Michigan School of Law and an attorney barred in the State of New York.  Mr. Smith has worked in-house since 2012 at several international companies, specializing in financial crime compliance, including anti-money-laundering (the U.S. Bank Secrecy Act), anti-corruption and anti-bribery (the U.S. Foreign Corrupt Practices Act), economic sanctions and export controls.

12.     At all times relevant to the allegations of wrongful conduct in this complaint, Coupang, Inc. has been a publicly traded company with securities registered under section 12(g) of the Securities Exchange Act of 1934 and is traded on the New York Stock Exchange.

13.     On December 2, 2013, Coupang Global LLC registered to do business in the State of California as a limited liability company.  *See* Ex. A, California Secretary of State, Business Search *Coupang* for Coupang Global LLC.  In 2014, Coupang established its U.S.-based presence in California, opening offices in Menlo Park, California (later relocated Mountain View, California) and also Riverside, California.  *See* Coupang Global Office Tour: The U.S., AboutCoupang.com, https://www.aboutcoupang.com/English/news/news-details/2023/Coupang-Global-Office-Tour-The-U.S/default.aspx.[1]  Upon information and belief, Coupang recruited many of its senior leadership from the top technology companies based in and around Silicon

---

[1] Coupang's California offices are located at 605 Fairchild Drive, Mountain View, CA 94043 and 1560 Sierra Ridge Dr, Riverside, CA 92507.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Valley: many of these U.S. employees were unwilling to relocate to Korea at that time, and these employees worked in Coupang's California offices, such that key functions and decision-making originated from the U.S.

14.     On December 9, 2022, Coupang, Inc. updated its registration to do business in California as a stock corporation.  *See* Ex. A.  At relevant times, certain members of Coupang's senior leadership, legal and compliance counsel were based in California, including but not limited to Assistant Corporate Secretary Sarah Tian, Chief Technology Officer, Thuan Pham, Chief Audit Officer Taha Mufti, and Sunkyung Valle Head of U.S. Human Resources Business Partners.  Coupang's accountants from KPMG, with whom Mr. Smith consulted and sought advice on various corporate financial and other compliance related issues, were also located in California.

15.     In 2015, Coupang Global LLC opened an office in Seattle, Washington.  Initially, the Seattle office was a WeWork shared office, until 2018 when Coupang opened its own office space in the city.  *See* Coupang Global Office Tour: The U.S., AboutCoupang.com, https://www.aboutcoupang.com/English/news/news-details/2023/Coupang-Global-Office-Tour-The-U.S/default.aspx.  Sunkyung Valle, Head of U.S. Human Resources Business Partners, was based in California and assisted in the process of setting up Seattle's physical office space, where many human resources functions and decisions were based.  *Id.* Upon information and belief, in addition to human resources, many critical legal and operational decisions and approvals were made in the Seattle office as those departments and senior leaders were based in Seattle.

16.     On August 28, 2018, Coupang Global LLC registered to do business in the State of Washington as foreign limited liability company.  *See* Ex. B, Washington Secretary of State, Corporations and Charities Filing System Business Search, for *Coupang Global LLC*.  Upon information and belief, since at least 2018, Coupang has maintained a presence in Seattle, including a physical office with employees, located at 720 Olive Way, STE 600, Seattle,

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Washington, 98101-1859 andat all relevant times, a meaningful number of Coupang's senior leaders were based in Washington, including James Roe, Deputy General Counsel and Assistant Corporate Secretary, who signed Mr. Smith's termination notice letter, and upon information and belief Jason Edgar, Finance Director, Controller U.S. Operations.

17.     Thus, since 2013, Coupang has actively established a U.S. presence whereby many essential functions of the Company operated out of its California and Washington offices. Coupang's engineering, human resources, legal and finance departments all operate within Washington, California, and other U.S. cities with other U.S. employees also working on assignment around the world, including in Korea.

18.     In September 2020 Coupang initiated its efforts to recruit Mr. Smith to Coupang. Over four months, Mr. Smith had a number of discussions with various higher ups in the legal and compliance departments and formed the impression that he was being well vetted through reference checks and other means by Coupang.  On December 2, 2020 (three months after Coupang's recruitment process started), Mr. Smith accepted an offer to serve as its Senior Director and Head of Anti-Money Laundering Compliance.  At the time, Mr. Smith lived and worked in Amsterdam, the Netherlands and in accepting Coupang's offer of employment, was asked to commit to moving his family to Korea.

19.     Mr. Smith and Defendant Coupang, Inc. (via the former entity, Coupang Global LLC) entered into a detailed employment agreement on December 2, 2020 that contains a California choice-of-law provision, stating "This Agreement shall be construed and interpreted in accordance with and governed by the laws of the State of California" and "[t]his Agreement expresses the entire understanding of the parties with respect to the terms of Employee's provision of services to the Company, and supersedes any prior oral or written agreement, understanding of the like."

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

20.     Coupang has adopted uniform employment and human resources policies which, upon information and belief, apply to all employees, regardless of location.  As such, Mr. Smith was provided a Coupang Employee Manual from the U.S that, upon information and belief, applied to U.S. and U.S. employees working on assignment in other locales.

21.     Beginning February 1, 2021, Mr. Smith worked for Coupang remotely from Amsterdam, and relocated his family – including his young child – to South Korea on or around April 16, 2021.[2]  Mr. Smith earned a base salary of $250,000 per year,[3] received a substantial initial equity grant, set to vest over 4 years, and was eligible for merit bonuses and additional grants of equity.[4]  The long-term vesting schedule was intended to encourage Mr. Smith to remain with Coupang over the long term.  To further entice Mr. Smith to join the Company, Coupang had offered – and ultimately granted – material benefits including a housing and transportation stipend, tuition assistance for his child and, as with all U.S. employees, regardless of where they were stationed, U.S. healthcare coverage through Cigna Global Benefits.

22.     Pursuant to discussions had before Mr. Smith was hired, Coupang initially assigned Mr. Smith to Coupang's Legal Department, but in the first week of May 2021, Mr. Smith and several other colleagues were transferred to the Compliance Department, headed by Coupang's new Chief Compliance Officer Ankit Dewan, who is not an attorney.  Despite Mr.

---

[2] Mr. Smith's wife left a well-paid role at a prestigious U.S. law firm to facilitate the move and based upon Coupang's expressed enthusiasm about Mr. Smith's past successes and future prospects at the company, they hoped to stay for many years.

[3] Upon information and belief, when Mr. Smith began working for Coupang remotely in the Netherlands, Coupang paid his sign-on bonus and base compensation through a U.S. bank account because the Company did not have a legal entity in the Netherlands.

[4] Mr. Smith's Equity Incentive Plan was originally adopted on August 8, 2011, and is governed by U.S. laws and regulations.  For example, the plan defines "Applicable Laws" as the "the legal requirements relating to the Plan and Awards under applicable provisions of federal securities laws, state limited liability company, corporate and securities laws, the Code, the rules of any applicable stock exchange or national market system, and the rules of any non-U.S. jurisdiction applicable to Awards granted to residents therein;" incorporates the Securities Exchange Act of 1934, as amended, and defines "Company" as "Coupang Global LLC, a Delaware limited liability company."

AMENDED COMPLAINT
Case No. 23-1887
Page 9 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Dewan's relative lack of experience in Mr. Smith's areas of expertise, he and Mr. Smith had a strong working relationship at the outset.

23.     As a Senior Compliance Director at a newly public company, Mr. Smith was charged with overseeing Coupang's anti-money laundering, sanctions, and financial crime compliance efforts.  Mr. Dewan quickly recognized Mr. Smith's expertise and assigned him to directly supervised Coupang's Head of Sanctions, Chagri Poyraz, incorporating this function to Mr. Smith's responsibilities.

24.     In mid-May 2021, with Mr. Dewan's knowledge and approval, Mr. Smith began a review of Coupang's financial crime risks.  Mr. Smith's review identified numerous violations of U.S. and Korean laws, including failure to abide by the Sarbanes-Oxley Act ("SOX"), and specifically SOX's accounting and financial control regulations, failure to establish sound and functional internal accounting and technology controls,[5] and that its internal "Know Your Customer" ("KYC") policies (required by the Financial Industry Regulatory Authority or "FINRA" and Korean Anti-Money Laundering laws) intended to identify and verify customers before issuing payments were made without any verification in violation of anti-money laundering laws, thus creating risks related to bank, wire, and securities fraud, as well as violations of Korean labor laws, and health and safety laws.

25.     Most significantly, Mr. Smith identified over 100 transactions between Coupang and an Iranian Embassy, that benefited the Iranian Government in violation of U.S. prohibitions against transactions with the Iranian Government under the Iranian Transactions and Sanctions Regulations, 31 C.F.R., Part 560.  Specifically, the Iranian Transactions and Sanctions Regulations prohibit U.S. domestic and foreign corporations from engaging in transactions with the Iranian Government, a country with which the United States has no diplomatic ties, upon

---

[5] Indeed, Coupang hired U.S. accounting firm KPMG to help improve its internal controls, recognizing they were non-compliant. Although KPMG has a national presence, Mr. Smith worked exclusively with a KPMG team based out of California.

AMENDED COMPLAINT
Case No. 23-1887
Page 10 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

which the U.S. has imposed sanctions, and which backs domestic and foreign terrorist groups that have attacked the U.S.  Under Section 13(r) of the Securities Exchange Act of 1934, U.S. domestic and foreign companies are required to disclose contracts, transactions, and other "dealings" with Iranian entities to the Securities and Exchange Commission.  15 U.S.C. § 78m(r).  Given the potential consequence of failing to properly report violations of sanctions laws against Iran, Mr. Smith reasonably believed that Coupang's transactions with the Iranian Government violated 31 C.F.R. Part 560, and moreover, that its failure to disclose these transactions constituted fraud on Coupang's shareholders, and also violated Section 13(r) of the Securities Exchange Act, which he reasonably believed to be a "rule or regulation" within the meaning of SOX's anti-retaliation provisions.

26.     When Mr. Smith learned about the numerous violations embedded in current Company's practices, he became increasingly concerned with Coupang's compliance processes and its willingness to flout the law.  As Coupang was obligated to disclose these violations, Mr. Smith felt that he should do everything in his power to assure that the violations were properly disclosed to the United States government by Coupang and to Coupang's shareholders via appropriate SEC filings.

27.     At various times in June and July 2021, Mr. Smith internally reported these and other legal violations to Coupang's newly minted Chief Compliance Officer, Mr. Dewan, and sought additional staffing to manage and mitigate these risks to Coupang.

28.     However, Mr. Dewan failed to take Mr. Smith's concerns seriously and rejected Mr. Smith's request for additional resources to manage the identified risks, even though Coupang's then-General Counsel had previously represented to Mr. Smith that he could hire a full-time staff member to support work of this nature.  To the contrary and as part of an intentional effort to ignore them, Mr. Dewan second-guessed Mr. Smith's concerns, accused him

AMENDED COMPLAINT
Case No. 23-1887
Page 11 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

of exaggerating, and discouraged him (both verbally and in writing) from reporting these violations to Coupang's senior management or government authorities.

29.   REDACTED

Thus, Mr. Smith's assessment regarding the violations did not change, nor did his opinion that Coupang should immediately halt, and review, its transactions with the Iranian Embassy, and report the transactions to U.S. government authorities and the Company's shareholders, *as Mr. Smith had previously advised Mr. Dewan.*

30.   Instead of following Mr. Smith's advice, Mr. Dewan continue his efforts to quash it by seeking advice from a friend with a small law firm in Texas, which had comparably little experience with the prohibited transactions at issue and was dwarfed in terms of reputation and relevant experience by the internationally respected firm Akin Gump from whom Mr. Smith had sought advice.  Upon information and belief, the Texas law firm advised Mr. Dewan that reporting was unnecessary.  Concerned about the adequacy of the Texas firm's opinion, however, Mr. Smith urged Mr. Dewan and Coupang to solicit *yet another* opinion from a different international firm with appropriately specialized experience.  Thereafter, Mr. Smith's reasonable belief regarding the illegality of the transactions and the need to report them remained unchanged.

31.   Despite Mr. Dewan's robust attempts to dissuade Mr. Smith from reporting these violations to Coupang's senior management, let alone government authorities and shareholders, Mr. Smith felt obliged to raise, and did raise, these issues with Coupang's Chief Accounting Officer, Michael Parker, who was based in the U.S. at the time, and Assistant Corporate Secretary, Sarah Tian, who was based in Coupang's California office.  In response, Mr. Parker

AMENDED COMPLAINT
Case No. 23-1887
Page 12 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1 and REDACTED ████████████████████████████████████████

2 ████████████████████████████████████

3   32.   After Mr. Smith defied Mr. Dewan's directive to suppress the prohibited

4 transactions issues by seeking counsel, escalating his concerns to Coupang's senior management,

5 and refusing to collude with Mr. Dewan to violate securities laws, rules and regulations, Mr.

6 Dewan began a swift campaign of retaliation against Mr. Smith, including harassment and

7 unwarranted reprimands.

8   33.   Immediately after he reported the violations in Summer 2021, Mr. Dewan used

9 disappearing messages on the "Signal" application to repeatedly chastise, reprimand and

10 otherwise harass Mr. Smith.  Mr. Dewan also reprimanded Mr. Smith and his direct report Chagri

11 Poyraz, the Head of Sanctions, making unfounded and untrue negative allegations about Mr.

12 Smith via email and about his performance and conduct, almost always unrelated to his role and

13 responsibilities.

14   34.   In early August 2021, in response to this blatant and egregious retaliation, Mr.

15 Smith drafted a memorandum to the file which memorialized his reports of Coupang's violations

16 of U.S. and Korean law, as well as Mr. Dewan's retaliatory harassment.  Mr. Smith let Mr.

17 Dewan know verbally that he was doing so, and in response, Mr. Dewan rebuked Mr. Smith via

18 e-mail for "document[ing] everything."

19   35.   Around this time, Mr. Dewan and Coupang excluded Mr. Smith from further

20 internal Coupang e-mail threads and conversations regarding the Iran Embassy transactions issue,

21 such that Mr. Smith was completely cut off from discussions and any analysis on what needed to

22 be reported, when, and to whom.  This was during a time Coupang's office in Korea worked

23 entirely remote as a Covid safety precaution, so removal from email and conversations also had

24 the effect of entirely isolating Mr. Smith from his team.

25

AMENDED COMPLAINT
Case No. 23-1887
Page 13 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

36.     On September 3, 2021 – just one working day before Mr. Smith was to receive his first formal performance evaluation -- Coupang abruptly forced Mr. Smith on an administrative leave and cut him off from all Company resources by confiscating his work laptop and building access badge.  Mr. Smith was shocked and confused by these actions, particularly since his requests for more information about his employment status or why he was being placed on leave were left unanswered. Specifically, when Mr. Smith asked if he was being terminated, Coupang did not respond in the affirmative but instead, failed to answer.

37.     Indeed, Coupang chose for several months to behave cagily about the status of Mr. Smith's employment, despite the fact that Coupang was well aware the uncertainty would be very distressing to Mr. Smith given that Coupang was sponsoring his work permit, paying for his housing, his children's school, and his medical and other benefits.

38.     On or around September 9, 2021, while Mr. Smith was on forced leave, not knowing anything about the status of his employment and experiencing significant emotional distress, Coupang sent Mr. Smith a proposed separation agreement, which included a condition that he resign from his position *by December 31, 2021.* Thus, while it is clear that Coupang was contemplating trying to force Mr. Smith into a separation of employment by the end of the year , as of September 9, 2021, there had not been any form of separation.

39.     Believing that his employment situation could and should be preserved and that if Coupang's counsel understood the scope of the situation, would be preserved, Mr. Smith refused to sign the proposed separation agreement and continued to inquire about the current and prospective status of his employment his agreement to sign a separation agreement.  Coupang refused to provide an answer as to his employment status, however, prompting Mr. Smith to retain Korean legal counsel, who wrote to Coupang on September 14, 2021, outlining Mr. Smith's corporate whistleblower reports and setting forth his complaints of whistleblower retaliation.

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

40.     In response, on or around September 27, 2021, REDACTED ███████████████████████████████████████████████ █████████████████████████████████████████████████ ██████████

41.     Around late September 2021/early October 2021, Coupang hired the U.S. law firm King & Spalding LLP REDACTED ██████████████████████ ███████ King & Spalding's legal team was based in various California cities while Coupang's Deputy General Counsel and Assistant Corporate Secretary REDACTED ████████████ from the Coupang's Seattle offices.

42.     REDACTED █████████████████████████████████████████ ██████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████

43.     REDACTED ████████████████████████████████ ███████████████████████████████████ █████████████████████████████████ █████████████████████████████████████ ████████   █████████████████████████ ███████████████████████████ █████████████████████████████ ████████████████████████████

---

[6] *Upjohn Co. v. United States*, 449 U.S. 383 (1981).

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

REDACTED

44.     On or around October 27, 2021, Mr. Smith's Korean counsel discussed Mr. Smith's employment with Coupang's Korean legal counsel, who stated they were uncertain as to why Mr. Smith had been put on "garden leave," that Coupang had initiated an investigation regarding Mr. Smith, and Coupang would let Mr. Smith's Korean counsel know when the investigation was completed.

45.     In prior and subsequent communications, Coupang's counsel explicitly contended that Mr. Smith was a California employee who was not covered by Korean law.  Kim & Chang argued that because Mr. Smith was an employee subject to California law, he was an at-will employee who Coupang was free to terminate (as opposed to a Korean employee who could only be terminated for cause, which Coupang did not at the time, and has never, alleged).

46.     That Mr. Smith's concerns about the compliance and legal issues discussed herein – including his view that the prohibited transactions with the Iranian embassy be disclosed to shareholders in public filings – were legitimate is evidenced by the fact that Coupang ultimately disclosed as "Controls and Procedures" issues some (but not all) of the illegal transactions Mr. Smith had identified in Form 10-Q filings with the United States Securities & Exchange Commission  in June, September, November and December of 2021.

47.     From the time Mr. Smith was placed on leave on September 3, 2021, he continued to reach out to Coupang regarding the status of his employment and potential paths forward, including whether he could be transferred to another office or team.  Coupang's failure to provide any response exacerbated Mr. Smith's confusion, given that during this time, Mr. Smith remained on payroll, his housing and medical benefits continued to be paid, and his child's school tuition continued to be paid and thus he understood that he was still an employee of the Company.  These

AMENDED COMPLAINT
Case No. 23-1887
Page 16 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

benefits continued beyond the proposed "Garden Leave" cut-off of December 31, 2021, proposed in the September 9, 2021, separation agreement rejected by Mr. Smith.

48.     In both November and December of 2021, Coupang's Human Resources department contacted Mr. Smith about contributing a portion of his paycheck to his Korean pension and preparing documentation for the Company to file Korean taxes on his behalf, as they would any other current employee.  In late December 2021, the Company paid for Mr. Smith's travel expenses to travel to and from the United States for the holidays.

49.     On January 18, 2022, after keeping Mr. Smith on administrative leave for over three months, Coupang's Deputy General Counsel and Assistant Corporate Secretary James Roe, who was located in Seattle, sent Mr. Smith a letter specifically informing him that "pursuant to Paragraph a(i) of Article 4 ('Term and Termination') of an employment agreement entered into by and between you and Coupang Global LLC. as of December 2, 2020 (the 'Employment Agreement'), the Employment Agreement will be validly terminated as of January 18, 2022 (the "Termination Date") by paying sixty (60) days' base salary."[7]

50.     By paying Mr. Smith 60 days' base salary in lieu of 60 days' notice, Coupang recognized that it had not previously provided Mr. Smith notice of his termination prior to January 18, 2022.

51.     Tellingly, Coupang did not terminate Mr. Smith "for cause" under Article 4 of his employment agreement, which could have been done at any time and without provision of notice or payment, because even under a broad definition of "cause," Coupang could not identify "any act or omission by Employee that is detrimental to the conduct of the business of Coupang" and "any other causes recognized by…the rules and policies of Coupang."

---

[7] Under Article 4 of Mr. Smith's Employment Agreement with Coupang, "Either party [could] terminate this Agreement at any time by giving the other party sixty (60) days' prior written notice (or, in the case of the Company, paying base salary in lieu of such notice)."

AMENDED COMPLAINT
Case No. 23-1887
Page 17 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

52.     As set forth in Article 23 of the Korean Labor Standards Act, an employer cannot dismiss an employee without justifiable grounds.  Labor Standards Act, Article 23(2) (S. Kor.). In discussion with Mr. Smith's Korean legal counsel, however, Coupang's Korean counsel maintained that Mr. Smith's employment was governed by California law, and that he was not eligible for the protection of Korean law.  As Korean employees can only be terminated for cause (which Coupang did not, and has not, alleged), Mr. Smith understood he was not terminated pursuant to Korean law, but rather the at-will California law governing his employment agreement.

53.     Notably, Coupang terminated Mr. Smith only two weeks before he was scheduled to vest in a substantial portion of his initial equity grant of 25,000 Restricted Equity Units, and only after it had concluded its investigation into his whistleblower claims, indicating that his protected complaints (and likely his impending vesting date) were a factor in the decision to terminate his employment.

54.     Upon information and belief, Coupang employees besides the primary decision-maker (Chief Administrative and Legal Officer James Roe who was Deputy General Counsel and Assistant Corporate Secretary and then Head of U.S. Legal) involved in the decisions to place Mr. Smith on leave, conduct an investigation into Mr. Smith's protected complaints, and to terminate him, were acting at the direction of other decision makers based in the United States, including but not limited to James Roe.

55.     Mr. Smith performed excellently in his role during his tenure.  Mr. Dewan lauded Mr. Smith in writing as Coupang's expert in financial crime as late as the summer of 2021, and Mr. Smith had numerous recognized successes during his tenure at Coupang.  Additionally, Mr. Smith had very strong relationships inside and outside Coupang and an enviable reputation.  In fact, after his abrupt suspension in the Fall, several Coupang employees and vendors reached out to Mr. Smith to inquire about his well-being, a Coupang Human Resources staffer expressed

AMENDED COMPLAINT
Case No. 23-1887
Page 18 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

surprise over his suspension because "everyone loves working with [him] and [he has] a great reputation," and a Korean attorney for Coupang noted that Mr. Smith had been "one of the few popular senior managers." Thus Mr. Smith cannot have been fired for any non-retaliatory, legitimate business reason.

56.     Coupang's treatment of Mr. Smith caused him severe emotional distress. His termination in January of 2022 completely unended Mr. Smith' and his family's lives, forcing them to move back to the United States in order to find comparable work.

57.     Mr. Smith has sustained substantial damages, including back and front pay, emotional distress, and punitive damages, as a result of Defendants' decision to unlawfully terminate him for his whistleblower activity.

## FIRST CAUSE OF ACTION
### (Violation of Sarbanes-Oxley (18 U.S.C. § 1514A))
### (Against All Defendants)

58.     Plaintiff incorporates the preceding paragraphs as alleged above.

59.     Plaintiff was an employee, and Defendants are employers, within the meaning of the Sarbanes-Oxley Act of 2002, Public Law 107-204, 18 U.S.C. section 1514A, *et seq*.

60.     Plaintiff engaged in activity that is legally-protected under the Sarbanes-Oxley Act by, *inter alia*, reporting or disclosing to his supervisors or individuals with authority to investigate/remedy, including those based at Defendant's U.S. offices, the following concerns which he reasonably and in good faith believed violated the law as detailed above including, without limitation and merely by way of example, Coupang's engaging in and failing to disclose or report to the SEC and to shareholders transactions with the Iranian Government in violation of Iranian Transactions and Sanctions Regulations, 31 C.F.R. Part 560, and Section 13(r) of the Securities Exchange Act, which he reasonably believed to be a rule or regulation covered by SOX.

AMENDED COMPLAINT
Case No. 23-1887
Page 19 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

61.     Plaintiff's protected activities as detailed herein were a contributing factor to Defendants' decision to take adverse actions against Mr. Smith as set forth in Paragraphs 21-33 herein.

62.     Defendant's retaliatory actions, including the investigation into Mr. Smith and his protected complaints as well as the decision to terminate his employment, were made in substantial part by U.S. based Coupang employees or U.S. based advisors, including Coupang's U.S. legal team.

63.     As a proximate result of the foregoing retaliatory actions, Mr. Smith has been damaged (economically and otherwise) and seeks all appropriate relief available under the whistleblower retaliation provisions of the Sarbanes-Oxley Act of 2002, including but not limited to full compensatory relief and all other necessary make-whole relief in an amount according to proof.

64.     Moreover, Plaintiff has been forced to and has incurred attorney's fees and costs to prosecute this action, which Plaintiff seeks to recover on this claim.

**SECOND CAUSE OF ACTION**
**(Whistleblower Retaliation in Violation of California Labor Code Section 1102.5)**
**(Against All Defendants)**

65.     Plaintiff incorporates the preceding paragraphs as alleged above.

66.     During his employment, Plaintiff engaged in activities protected under California Labor Code section 1102.5 as set forth herein.  For example, without limitation and merely by way of example, among other things, Plaintiff engaged in activity that is legally-protected by, *inter alia*, reporting or disclosing to his supervisors or individuals with authority to investigate/remedy concerns which he reasonably and in good faith believed violated the law as detailed above including, without limitation and merely by way of example, Coupang's engaging in and failing to report transactions with the Iranian Government in SEC filings available to

AMENDED COMPLAINT
Case No. 23-1887
Page 20 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

Coupang shareholders in violation of Iranian Transactions and Sanctions Regulations, 31 C.F.R. Part 560, and Section 13(r) of the Securities Exchange Act.

67.     Plaintiff's conduct constituted a disclosure of and/or opposition to conduct that Plaintiff had reasonable cause to believe disclosed a violation of state, local and/or federal laws, rules, or regulations.  Plaintiff made such disclosures to person(s) with authority over Plaintiff or other employee(s) who had the authority to investigate, discover, or correct the violation or non-compliance.  Plaintiff also refused to engage in activity that was illegal (e.g., Mr. Dewan's efforts as Coupang's Chief Compliance Officer to cover up and not disclose transactions between Defendants and the Iranian Government).  Upon information and belief, Defendants also perceived, feared and/or believed that Plaintiff might make protected disclosures in the future. Plaintiff's conduct was thus protected under California Labor Code section 1102.5.

68.     Defendants took adverse action against Plaintiff as detailed herein.  Plaintiff's protected activities, refusals and/or opposition were a contributing factor to Defendants' decision to take those adverse actions against Plaintiff.

69.     As a direct and foreseeable result of the aforesaid acts of said Defendants, Plaintiff has suffered and will suffer harm for which Plaintiff is entitled to general and special damages and all appropriate compensatory relief.  Defendants' conduct was a substantial factor in causing that harm.

70.     Plaintiff has been forced to and has incurred attorney's fees and costs to prosecute this action, which Plaintiff seeks to recover on this claim.

71.     Defendants' conduct as described herein was authorized, condoned, perpetrated and/or ratified by a managing agent or officer of Defendants.  These acts were done with malice, fraud, oppression, and in reckless disregard of Plaintiff's rights.  Further, said actions were despicable in character and warrant the imposition of punitive damages in a sum sufficient to punish and deter Defendants' future conduct.

AMENDED COMPLAINT
Case No. 23-1887
Page 21 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

**THIRD CAUSE OF ACTION**
**(Wrongful Termination in Violation of Public Policy (California Common Law))**
**(Against All Defendants)**

72.     Plaintiff incorporates the preceding paragraphs as alleged above.

73.     Under California law, no employee, whether they are an at-will employee, or an employee under a written or other employment contract, can be terminated for a reason that is in violation of a fundamental public policy.  Thus, when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions.

74.     The above-described conduct of Defendants constitutes wrongful termination of Plaintiff in violation of public policy.  It is against the public policy of the State of California for an employer to terminate an employee because he reports within Coupang that Coupang may be engaged in an unlawful activity or conduct that he reasonably believes to constitute unlawful activity.

75.     As set forth herein, Defendants' actions were wrongful and in violation of fundamental public policies of the State of California and the United States of America, as reflected in the laws, objectives, and policies including, without limitation and merely by way of example: 18 U.S.C. § 1514A and California Labor Code § 1102.5.  Plaintiff expressly reserves the right to rely on and assert other statutes that embody these same or similar public policies as the basis for this claim.

76.     Plaintiff disclosed information regarding what he reasonably believed to be Defendants' unlawful practices to persons with authority over Plaintiff and other employees of Defendants.

77.     Defendants had direct knowledge of Plaintiff's complaints of Defendants' unlawful activities.

78.     Defendants discharged Plaintiff in retaliation for his complaints of Defendants' unlawful activities.

79.     Plaintiff's termination was wrongful and against the public policy of the State of California.  As a direct and proximate result of the Defendants' wrongful termination of Plaintiff, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of earnings and other employment benefits, and the intangible loss of employment-related opportunities, all in an amount subject to proof at the time of trial.

80.     As a further direct and proximate result of the Defendants' wrongful termination of Plaintiff, Plaintiff suffered and continues to suffer, humiliation, mental anguish, and emotional and physical distress, all in an amount subject to proof at the time of trial.

81.     As a further direct and proximate result of the foregoing conduct, Plaintiff has incurred attorneys' fees and costs in an amount according to proof.

82.     Defendants' conduct as described herein was authorized, condoned, perpetrated and/or ratified by a managing agent or officer of Defendants.  These acts were done with malice, fraud, oppression, and in reckless disregard of Plaintiff's rights.  Further, said actions were despicable in character and warrant the imposition of punitive damages in a sum sufficient to punish and deter Defendants' future conduct.

### FOURTH CAUSE OF ACTION
**(Alternatively, Wrongful Termination in Violation of Public Policy
(Washington Common Law))
(Against All Defendants)**

83.     Plaintiff incorporates the preceding paragraphs as alleged above.

84.     Washington common law recognizes a tort of wrongful termination in violation of a public policy.

85.     A federal statute can serve as the source of a state public policy in support of a wrongful termination claim.  *See Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 234 (1984)

AMENDED COMPLAINT
Case No. 23-1887
Page 23 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

(recognizing public policy based on the Foreign Corrupt Practices Act of 1977, 91 Stat. 1494, which "requires any company subject to the reporting requirements of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, to devise and maintain a system of internal accounting controls that ensures compliance with the anti-bribery provisions.").

86.     It is against Washington state public policy to terminate an employee for engaging in what they reasonably believed to be protected activity under a legal mandate.  This can include for refusing to commit an act reasonably believed to be illegal, whistleblowing, or in retaliation for reporting employer misconduct.  *See, e.g., Gardner v. Loomis Armored*, 128 Wn.2d 931, 936 (1996) (recognizing claims for termination in violation of public policy "have generally been allowed in four different situations," including "(1) where employees are fired for refusing to commit an illegal act," and "(4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing.").

87.     Washington state public policy is not narrowly confined to the exact contours of the statute that is the basis for the underlying public policy and may offer a remedy against a particular employer even where one does not exist under the statute underlying the policy.  *See Roberts v. Dudley,* 140 Wn.2d 58, 72-73 (2000) (recognizing clear mandate of public policy against sex discrimination that governs all Washington employers, even though the Washington Law Against Discrimination ("WLAD") statutory remedies only apply to employers with eight or more employees).

88.     Plaintiff disclosed information regarding what he reasonably believed to be Coupang's violations of a rule or regulation within the meaning of SOX's anti-retaliation provisions, reflected in Section 806, 18 U.S.C. § 1514A, to persons with authority over Plaintiff and other employees of Defendants.

89.     Defendants had direct knowledge of Plaintiff's complaints of Defendants' unlawful activities.

90.     Defendants discharged Plaintiff in retaliation for his complaints of Defendants' unlawful activities.

91.     The above-described conduct of Defendants, in terminating Plaintiff because he reported that Coupang may be engaged in unlawful activity or conduct that he reasonably believes is a violation of a rule or regulation within the meaning of SOX, constitutes wrongful termination of Plaintiff in violation of Washington state public policy.

92.     Plaintiff's termination was wrongful and against the public policy of the State of Washington.  As a direct and proximate result of the Defendants' wrongful termination of Plaintiff, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of earnings and other employment benefits, and the intangible loss of employment-related opportunities, all in an amount subject to proof at the time of trial.

93.     As a further direct and proximate result of the Defendants' wrongful termination of Plaintiff, Plaintiff suffered and continues to suffer, humiliation, mental anguish, and emotional and physical distress, all in an amount subject to proof at the time of trial.

94.     As a further direct and proximate result of the foregoing conduct, Plaintiff has incurred attorneys' fees and costs in an amount according to proof.

## **FIFTH CAUSE OF ACTION**
**(Breach of Implied Covenant of Good Faith and Fair Dealing (California Common Law) (Against Defendant Coupang)**

95.     Under California law, every contract or agreement contains an implied promise of good faith and fair dealing, requiring each party not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.  *Sheppard v. Morgan Keegan & Co.* (1990) 218 Cal.App.3d 61, 66.)

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

96.     Plaintiff and Defendant Coupang entered into an employment agreement on December 2, 2020, pursuant to which Mr. Smith was hired to serve as "Senior Director, Head of Anti-Money Laundering Compliance."

97.     One of Plaintiff's primary obligations under the Employment Agreement in this role was "Compliance."  Specifically, Article 9 of the contract states, "Compliance: Employee further agrees to comply with all laws, rules and regulations of the Company and any regulatory authority or agency."

98.     Mr. Smith was required to, and did, "perform in good faith and with a high duty of care [his] duties and responsibilities as set forth in [the] Agreement."  *See* Article 2 re Performance.

99.     Indeed, in order to meet his obligation under Article 9, Plaintiff disclosed to his supervisors and other individuals with authority to investigate and/or remedy Compliance issues, his reasonable belief that Coupang had violated the law, including by engaging in and failing to report transactions with the Iranian Government in violation of Iranian Transactions and Sanctions Regulations, 31 C.F.R. Part 560, and Section 13(r) of the Securities Exchange Act.

100.     Plaintiff's performance of Article 9 of his Employment Agreement, and specifically his efforts to ensure his and Coupang's compliance with all laws, rules, and regulations of any regulatory authority or agency, were a contributing factor to Defendant Coupang's decision to terminate his employment.

101.     Defendant Coupang unfairly interfered with and deprived Plaintiff of the benefits under his Employment Agreement by terminating his employment at least partially because of his performance of his obligations thereunder.

102.     Indeed, Defendant Coupang placed Plaintiff in a Catch-22 position of either complying with Article 9 of his Employment Agreement and face retaliatory actions *or* failing to raise Coupang's compliance issues and be in potential breach of his obligations under Section 9.

AMENDED COMPLAINT
Case No. 23-1887
Page 26 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

103.     In doing so, Defendant Coupang did not act fairly and in good faith with respect to the Employment Agreement.

104.     Plaintiff was damaged by Defendant Coupang's conduct in that he was deprived of the foreseeable damages arising from Defendant's breach of its obligation to act in good faith and deal fairly with Plaintiff, including compensation and the value of other job-related benefits.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests:

1.     General and special damages, including consequential damages, according to proof;

2.     Loss of earnings and compensation, including equity compensation and vesting according to proof;

3.     Restitution of all monies due to Plaintiff;

4.     Damages for any and all forms of emotional distress Plaintiff experienced, including but not limited to humiliation, loss of enjoyment of life, pain and suffering, personal indignity, embarrassment, fear, sadness, anger, anxiety, and anguish.

5.     Punitive damages on the Second and Third Causes of Action, in an amount sufficient to punish Defendants, make an example of them, and deter future unlawful conduct;

6.     Pre-judgment interest;

7.     Costs of suit including, and expenses incurred herein;

8.     Reasonable attorneys' fees pursuant to 18 U.S.C. § 1514A(c)(2), California Labor Code § 1102.5(j), and California Code of Civil Procedure § 1021.5, and RCW 49.48.030.

9.     Such other and further relief as the Court may deem just and proper.

AMENDED COMPLAINT
Case No. 23-1887
Page 27 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of himself, respectfully demands a trial by jury.

Dated:    February 26, 2024

Respectfully submitted,

By: /s/ *Cassandra Lenning*
Cassandra Lenning (WSBA #54336)
Jennifer Schwartz*
**OUTTEN & GOLDEN LLP**
One California Street, Suite 1250
San Francisco, CA 94111
Email: clenning@outtengolden.com
Email: jschwartz@outtengolden.com
Telephone: (415) 638-8800

Kendall Onyendu*
**OUTTEN & GOLDEN LLP**
685 3rd Ave, 25th Floor
New York, NY 10017
Email: konyendu@outtengolden.com
Telephone: (212) 245-1000

Michael C. Subit (WSBA #29189)
**FRANK FREED SUBIT & THOMAS LLP**
705 Second Avenue, Suite 1200
Seattle, WA 98104
Email: msubit@frankfreed.com
Telephone: (206) 682-6177

AMENDED COMPLAINT
Case No. 23-1887
Page 28 of 28

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800