Hon. Richard A. Jones

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

PHILIP SMITH,

         Plaintiff,

   v.

COUPANG INC. and DOES 1-10, inclusive,

         Defendants.

Case No. 23-1887

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

NOTICE DATE: April 19, 2024

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD ........................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

    I.     Plaintiff Adequately Pleaded A Violation of SOX's Anti-Retaliation Provision... 3

          A.     Plaintiff has sufficiently alleged he engaged in protected activity ............ 3

                i.     Allegations regarding shareholder, securities, bank, and wire fraud ...................................................................................4

                ii.    Allegations regarding violation of SEC rules or regulations ..........4

                iii.   Allegations regarding reasonable belief about the nature of the violations ...................................................................................6

          B.     Plaintiff has alleged sufficient facts to create a dispute as to when he reasonably should have known of his retaliatory termination ............... 8

          C.     Plaintiff has alleged sufficient domestic conduct to create a disputed factual question regarding whether application of SOX would be extraterritorial ................................................................... 13

    II.    Plaintiff Has Stated A Claim For Wrongful Termination Under Washington Law ................................................................................................................... 17

          A.     A clear public policy against whistleblower retaliation exists in Washington ............................................................................................ 17

          B.     Plaintiff may prevail on his WTVPP claim if relief is foreclosed under SOX ............................................................................................ 19

          C.     Defendant misstates Plaintiff's burden to establish a clear public policy .................................................................................................... 19

          D.     WTVPP claims extend to employment decisions made in Washington State .................................................................................. 20

    III.   Plaintiff Has Adequately Pleaded A Claim For Violation Of The Covenant Of Good Faith And Fair Dealing ....................................................................... 22

    IV.   No Grounds Exist For Dismissal Of Plaintiff's Labor Code § 1102.5 or *Tameny* Claims .......................................................................................... 24

    V.    The Court Should Not Deny Plaintiff Leave To Amend ..................................... 25

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page ii

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

CONCLUSION ................................................................................................................... 25

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page iii

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

# TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(S)**

*Abraham v. Woods Hole Oceanographic Inst.*,
   553 F.3d 114 (1st Cir. 2009)................................................................12, 13

*Alaiyan v. Insightful Corp.*,
   128 Wash. App. 1002 (2005)......................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................2

*Avlon v. American Express Co.*,
   ARB No. 09-089, ALJ No. 2008-SOX-51 (ARB May 31, 2011) .........................11

*Baker v. Smith & Wesson, Inc.*,
   40 F.4th 43 (1st Cir. 2002)...........................................................................7

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988) ......................................................................25

*Barker v. Stoli Grp. USA, LLC*,
   No. 20 Civ. 2170, 2022 U.S. Dist. LEXIS 98730 (E.D. Cal. June 1, 2022)............24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................2

*Blanchard v. Exelis Systems Corp.*,
   ARB No. 15-031, ALJ 2014-SOX-20 (ARB Aug. 29, 2017)...............................14

*Burnside v. Simpson Paper Co.*,
   123 Wn.2d 93, 864 P.2d 937 (Wash. 1994)..................................................21

*Bybee v. Int'l Bhd. of Teamsters*,
   No. 22 Civ. 16280, 2023 U.S. App. LEXIS 29754 (9th Cir. 2023)......................25

*Cagle v. Burns & Roe*,
   106 Wn.2d 911, 726 P.2d 434 (1986)..........................................................20

*Carnero v. Boston Sci. Corp.*,
   433 F.3d 1 (1st Cir. 2006)..........................................................................16

*Childress v. Watson Agency, Inc.*,
   2005 Wash. App. LEXIS 3106 (2005)...........................................................18

PLTF'S OPPOSITION TO MOTION TO DISMISS         **Outten & Golden LLP**
AMENDED COMPLAINT                     One California Street, Suite 1250
Case No. 23-1887                             San Francisco, CA 94111
Page iv                                      (415) 638-8800

*City of Moorpark v. Superior Ct.*,
    18 Cal. 4th 1143 (1998) ................................................................................24

*Clark v. Resistoflex Co.*,
    854 F.2d 762 (5th Cir. 1988) ........................................................................11

*Coppinger-Martin v. Nordstrom, Inc.*,
    ARB 07-067, 2007-SOX-019 (ARB Sept. 25, 2009) ...................................8

*Coppinger-Martin v. Solis*,
    627 F.3d 745 (9th Cir. 2010) ........................................................................12

*Corbett v. East Energy Corp.*,
    ARB No. 07-00044, ALJ No. 2006-SOX-00065 (ARB Dec. 31, 2008) ......8

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ..........................................................................2

*Danny v. Laidlaw Transit Servs., Inc.*,
    165 Wn.2d 200, 193 P.3d 128 (2008) ..........................................................19

*Daramola v. Oracle Am., Inc.*,
    92 F.4th 833 (9th Cir. 2024) ...................................................................13, 14

*English v. Whitfield*,
    858 F.2d 957 (4th Cir. 1988) ........................................................................12

*Fleet v. Bank of America N.A.*
    229 Cal. App. 4th 1403 (2014) .....................................................................22

*Gardner v. Loomis Armored*,
    128 Wn.2d 931, 913 P.2d 377 (1996) ..........................................................17

*Garvey v. Admin. Rev. Bd.*,
    56 F.4th 110 (D.C. Cir. 2022) ......................................................................17

*Guillot v. Potlatch Corp.*,
    2004 U.S. Dist. LEXIS 33098 (E.D. Wash. 2004) ......................................21

*Guz v. Bechtel Nat'l, Inc.*,
    24 Cal. 4th 317 (Cal. 2000)...........................................................................23

*Hanson v. MGM Resorts Int'l*,
    2017 U.S. Dist. LEXIS 113690 (W.D. Wash. July 20, 2017) ......................18

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page v

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

*Karstetter v. King County Corr. Guild*,
    193 Wn.2d 672, 444 P.3d 1185 (2019)....................................................18, 19, 21

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) .............................................................2, 3, 4, 9

*King v. U.S. Bank, NA*,
    (2020) 53 Cal.App.5th 675, 706-707 ....................................................23, 24

*Lee v. City of L.A.*,
    250 F.3d 668 (9th Cir. 2001) .......................................................................2

*Liu v. Amway Corp.*,
    347 F.3d 1125 (9th Cir. 2003) ...................................................................23

*Moss v. U.S. Secret Sevr.*,
    572 F.3d 962 (9th Cir. 2009) .....................................................................25

*O'Mahony v. Accenture, LTD.*,
    537 F. Supp. 2d 506 (S.D.N.Y. Feb. 5, 2008)............................................14

*Penesso v. LCC Int'l, Inc.*,
    2005 DOLSOX LEXIS 95, ALJ No. 2005-SOX-00016 (ALJ Mar. 4, 2005) ............14, 15, 16

*Racine & Laramie, Ltd., Inc. v. Calif. Dept. of Parks & Recs.*
    11 Cal. App. 4th 1026 (1993) ....................................................................22

*Roberts v. Dudley*,
    140 Wn.2d 58, 992 P.2d 901 (2000).........................................................19

*Roe v. TeleTech Customer Care Mgmt. (Colo.) LLC*,
    171 Wn.2d 736, 257 P.3d 586 (2011) ...............................................18, 19, 20

*Rosenstein v. PacifiCorp*,
    No. 23 Civ. 136, 2023 U.S. Dist. LEXIS182269 (D. Or. Oct. 5, 2023) ................23

*Rzepiennik v. Archstone-Smith, Inc.*,
    No. 07 Civ. 01243, 2008 U.S. Dist. LEXIS 23533 (D. Colo. Mar. 12, 2008).........12

*Schreiber Distrib. Co. v. ServWell Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ...................................................................25

*Sedlacek v. Hillis*,
    145 Wn.2d 379, 36 P.3d 1014 (2001) .................................................18, 19

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page vi

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

*Smith v. Bates Technical College*,
    139 Wn.2d 793, 991 P.2d 1135 (2000)................................................................20, 21

*Snyder v. Wyeth Pharms.*,
    ARB 09-008, 2008-SOX-055 (ARB Apr. 30, 2009) ...............................................8

*Thompson v. St. Regis Paper Co.*,
    102 Wn.2d 219, 685 P.2d 1081 (1984) ................................................................17

*Ulrich v. Moody's Corp.*,
    No. 13 Civ. 0008, 2014 U.S. LEXIS 138082 (S.D.N.Y. Sept. 30, 2014)...............16

*Upjohn, Co. v. United States*,
    449 U.S. 383 (1981) ................................................................................................10

*Van Asdale v. Int'l Game Tech.*,
    577 F.3d 989 (9th Cir. 2009) ..........................................................................4, 6, 7

*Wadler v. Bio-Rad Labs., Inc.*,
    916 F.3d 1176 (9th Cir. 2019) .................................................................................7

**STATUTES**

18 U.S.C. § 1514A ...........................................................................................................5

15 U.S. Code § 7241 ........................................................................................................6

15 U.S. Code § 7262 ........................................................................................................6

**OTHER AUTHORITIES**

17 C.F.R. 240.13a-15(f) ...................................................................................................6

6A Wash. Pattern Jury Instr. Civ. 330.50 (cmt.) (7th ed) .............................................18

Fed. R. Civ. P. 15(a)(2) .................................................................................................25

Wash. GR 14.1 ...............................................................................................................18

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page vii

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1

## INTRODUCTION

2      In seeking dismissal pursuant to Rule 12(b)(6), Defendant seeks to improperly introduce

3 (and relies on) unverified facts and documents outside of the Amended Complaint, presuming

4 the Court will accept them as true and dispositive.[1]  Just as troubling is Defendant's wide-

5 ranging reliance on cases involving dismissal at later stages of litigation after extensive fact

6 discovery.  Even if the Court were to consider some of the extraneous documents proffered by

7 Defendant, Coupang's arguments fail.

8      Plaintiff has adequately pleaded he engaged in protected activity under the anti-retaliation

9 provision of the Sarbanes Oxley Act ("SOX"), alleging he reported concerns about shareholder

10 fraud, bank, wire and securities fraud, and violations of Securities and Exchange Commission

11 ("SEC") rules and regulations incorporated in the statutory violations about which Plaintiff

12 raised concerns.

13      Defendant's argument that Plaintiff's SOX administrative complaint filed with the

14 Occupational Safety and Health Administration ("OSHA") was untimely fails to address *many* of

15 Plaintiff's allegations – including those regarding the ambiguity Defendant itself created about

16 the status of Plaintiff's employment – such that the OSHA filing deadline must be calculated

17 from the date of Plaintiff's termination notice.

18      Plaintiff has alleged sufficient domestic contact related to his employment relationship to

19 avoid dismissal on extraterritoriality grounds.

20      Plaintiff's wrongful discharge claim survives based on Washington's clearly established

21 public policy prohibiting whistleblower retaliation, as reflected in SOX and Washington

22 common law.

23

24
———————————————————
[1] Plaintiff's specific objections to these extraneous facts and documents are addressed in Plaintiff's
25 Objections to Defendant's Request for Judicial Notice and Incorporation by Reference ("Objections").
Dkt. 38.

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 1 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1      Defendant's argument that Plaintiff cannot bring a claim for a breach of the covenant of

2  good faith and fair dealing ("BCGFFD") is meritless, as it relies on an irrelevant body of

3  California law involving the implied promise not to terminate without cause.

4      Plaintiff is not precluded from bringing claims under California's Labor Code § 1102.5

5  because the parties agreed to the application of California law through a California choice of law

6  provision in his employment contract.

7      Defendant's Motion should be denied in its entirety.

8                              **LEGAL STANDARD**

9      To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual

10 detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it

11 rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The Court must

12 accept well-pled factual allegations as true and draw all reasonable inferences in favor of the

13 non-moving party.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  The

14 standard is simply whether the complaint "contain[s] sufficient factual matter, accepted as true,

15 to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

16 (2009) (citation omitted).

17      On a motion to dismiss, the Court's review is generally limited to the operative

18 pleading.  *Daniels-Hall*, 629 F.3d at 998; *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

19 The "unscrupulous use of extrinsic documents to resolve competing theories against the

20 complaint risks premature dismissals of plausible claims that may turn out to be valid after

21 discovery."  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)

22 (warning against "overuse and improper application of judicial notice and the incorporation-by-

23 reference doctrine" in an attempt "to undermine the complaint, and hopefully dismiss the case at

24 an early stage.").  Courts generally may accept the truth of matters asserted in documents

25 incorporated-by-reference but, "*it is improper to do so only to resolve factual disputes against*

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 2 of 26                              **Outten & Golden LLP**
                                          One California Street, Suite 1250
                                          San Francisco, CA 94111
                                          (415) 638-8800

1    *the plaintiff's well-pled allegations in the complaint.*"  *Id.* at 1014 (emphasis added).  "The

2    incorporation-by-reference doctrine does not override the fundamental rule that courts must

3    interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage."  *Id.*;

4    *see also id.* at 999 ("a court cannot take judicial notice of disputed facts").

5                                            **ARGUMENT**

6    **I.     Plaintiff Adequately Pleaded A Violation of SOX's Anti-Retaliation Provision.**

7          **A.     Plaintiff has sufficiently alleged he engaged in protected activity.**

8           Defendant argues Plaintiff has not alleged he engaged in protected activity under SOX

9    because "Plaintiff *must show* . . . he reasonably believed that Defendant engaged in conduct that

10   'constitute[d] a violation of" one of the enumerated violations in 18 U.S.C. § 1514A – and he

11   failed to do so.  Mot. at 14.  As an initial matter, Plaintiff is not obligated to "show" anything at

12   this stage – the issue is solely the adequacy of his allegations.  Nonetheless, Plaintiff has

13   sufficiently pleaded conduct he reasonably believed violated enumerated violations and that his

14   communications with Defendant specifically related to laws listed in §1514A.

15          Defendant frames Plaintiff's allegations as if they related solely to his concerns about

16   Coupang's prohibited transactions with an Iranian embassy, arguing Plaintiff's complaints about

17   them cannot constitute protected activity because the relevant rule – 31 C.F.R Part 560

18   (prohibiting transactions with Iran) – is a Treasury, not SEC, regulation.  This ignores Plaintiff's

19   allegations that, beyond reports about the illegal transactions themselves, he also raised concerns

20   about potential shareholder fraud and SEC disclosure failures required by the Securities and

21   Exchange Act, which necessarily incorporate SEC rules.  Defendant similarly ignores many of

22   Plaintiff's other allegations regarding shareholder, securities, bank, and wire fraud, and SOX

23   accounting and financial control regulations.

24

25

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 3 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1           i.    <u>Allegations regarding shareholder, securities, bank, and wire fraud.</u>

2          As a threshold matter, Plaintiff has indisputably alleged he reasonably believed

3 Defendant engaged in conduct constituting fraud against shareholders and securities fraud, both

4 enumerated § 1514A violations, and specifically reported his concerns to Defendant.  *See* AC[2] ¶

5 25 (failure to disclose Iranian transactions "constituted fraud on Coupang's shareholders"); *Id.* ¶

6 26 (Mr. Smith tried to ensure "the violations were properly disclosed to the United States

7 government by Coupang and to Coupang's shareholders via appropriate SEC filings"); *Id.* ¶ 27;

8 (Mr. Smith internally reported "these and other legal violations" to Coupang's Chief Compliance

9 Officer and sought additional staffing to manage and mitigate these risks); *Id.* ¶¶ 28-32 (Mr.

10 Smith reported to, and sought advice from, various law firms and accounting firms – advisors to

11 Defendant – regarding the need to disclose the Iranian transactions and other violations to the

12 SEC); *Id.* ¶ 32 (after "escalating his concerns . . . and refusing to collude with Mr. Dewan to

13 violate securities laws, rules and regulations, Mr. Dewan began a swift campaign of retaliation").

14          In addition, Plaintiff also alleged he identified and reported risks related to bank and wire

15 fraud (enumerated provisions of §1514A), both explicitly and subsequently by reference.  *See*

16 AC ¶¶ 24, 26-27, 29-30.  Thus, Plaintiff adequately alleged conduct constituting a violation of

17 "Federal law relating to fraud against shareholders," [3] as well as securities fraud, bank, and wire

18 fraud, all of which are enumerated provisions of §1514A.

19          ii.    <u>Allegations regarding violation of SEC rules or regulations.</u>

20          While Plaintiff's explicit allegations regarding shareholder, securities, bank, and wire

21 fraud suffice on their own, Plaintiff's concerns also related to the violation of a "rule or

22

23   [2] The appropriate citation for the Amended Complaint is "Am. Compl.," however, for ease of the Court, Plaintiff mirrors Defendant's citation in this Opposition.

24

25   [3] Contrary to Defendant's misleading assertion (Mot. at 14-15), nothing in *Van Asdale v. Int'l Game Tech.*, requires Plaintiff to allege the elements of fraud where his claims are not fraud but whistleblower retaliation. 577 F.3d 989, 1001 (9th Cir. 2009); *see also Khoja*, 899 F.3d 1008.

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 4 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1  regulation of the [SEC]." 18 U.S.C. § 1514A(a)(1).  Plaintiff's concern was not only to

2  remediate the Iranian transactions, but to ensure they were properly disclosed in SEC filings.

3  AC ¶ 26.  Relatedly, Plaintiff alleges "[u]nder Section 13(r) of the Securities Exchange Act of

4  1934, U.S. domestic and foreign companies are required to disclose contracts, transactions, and

5  other 'dealings' with Iranian entities *to the Securities and Exchange Commission . . . .*"  AC ¶ 25

6  (citing 15 U.S.C. § 78m(r), codifying § 13(r) of the Securities Exchange Act)) (emphasis added).

7  This knowledge supported Mr. Smith's belief that Coupang's failure to disclose the transactions

8  constituted a failure to comply with SEC corporate disclosure rules.[4]  *Id.*  ¶¶ 25-27.  Section

9  78m(r)(3) provides disclosers of prohibited transactions "shall separately file with the

10  Commission, concurrently with the annual or quarterly report under subsection (a), a notice that

11  the disclosure of that activity has been included in that annual or quarterly report that identifies

12  the issuer and contains the information required by paragraph (2)."  And all of Section 78m is

13  replete with references to requirements and guidelines regarding disclosures and filings with the

14  SEC, and incorporates by reference SEC requirements regarding the nature, manner, and timing

15  of such filings.  Because Section 78m(r) is so entwined with related SEC rules, Plaintiff's reports

16  must be viewed as relating to "any rule or regulation of the Security and Exchange

17  Commission." 18 U.S.C. § 1514A.  They should not be overly dissected to avoid this

18  conclusion.

19          Plaintiff also alleged he identified and reported numerous violations of SOX's accounting

20  and financial control regulations.  *See* AC ¶ 24 (Mr. Smith's "identified and reported numerous

21  violations of U.S. and Korean laws, including failure to abide by" SOX's "accounting and

22  financial control regulations, failure to establish sound and functional internal accounting and

23  technology controls, and that its internal "Know Your Customer" ("KYC") policies . . ."); *id.* ¶

24
_____

25  [4] For example, 17 C.F.R. 249.310 provides the Form 10-K be used for annual and transition reports
pursuant to sections 13 or 15(d) of the Securities Exchange Act.

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 5 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

25.  Sections 302 and 304 of SOX pertain to "Corporate Responsibility for Financial Reports" and "Management Assessment of Internal Controls," respectively.  15 U.S. Code § 7241, 7262. The SEC passed a related rule requiring certain corporate officers to certify that Exchange Act disclosures, including the financial statements of the company and all supplemental disclosures, are truthful, reliable, and effective.  17 C.F.R. 240.13a-15(f).  Given the statutory and regulatory scheme related to corporate accounting, audit and financial controls, Plaintiff's allegations fall within Section 1514A's protection against retaliation for reporting conduct Plaintiff reasonably believed to constitute violation of an SEC rule or regulation.

In any event, Plaintiff need not specifically identify specific rules and regulations when reporting concerns.[5]  For example, in *Van Asdale*, the Ninth Circuit reversed dismissal on summary judgment, finding deposition testimony involving intimations of suspect conduct related to a merger and possible intentional concealment was "definitively and specifically related to shareholder fraud" given use of the words "fraud," "fraud on shareholders" or "stock fraud."  577 F.3d at 997.  The Court of Appeals noted, "*[a]n employee need not cite a code section he believes was violated to trigger the protections of § 1514A.*"  *Id.* (citation omitted, emphasis added).[6]  Thus, Plaintiff has adequately pleaded sufficient specific allegations concerning SEC rules or regulations related to SOX violations.

          iii.    <u>Allegations regarding reasonable belief about the nature of the violations.</u>

Finally, Plaintiff alleges he reasonably believed Section 13(r) of the Securities Exchange Act to be an SEC "rule or regulation" within the meaning of SOX's anti-retaliation provisions. AC ¶¶ 25, 60, 66, 99.  Defendant asserts his reasonable belief "is relevant only to the extent the

---

[5] If the Court finds Plaintiff must more specifically identify the specific Rules relevant to his reasonable belief, however, he seeks leave to do so in a Second Amended Complaint.

[6] The *Van Asdale* court weighed a substantial amount of evidence *produced during discovery and prior to the summary judgment briefing* to determine whether the lawyer-employee's communications "definitively and specifically" related to one of the listed categories of fraud or securities violations under § 1514A(a)(1).

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 6 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1   Plaintiff 'reasonably believed' that the conduct reported *violated* one of the laws listed in SOX"

2   and "it is not relevant that Plaintiff claims that he believed a Treasury Department Regulation

3   and the Securities Exchange Act were listed in SOX." Mot. at 15 (emphasis in original). This

4   circular argument fails because it is sufficient under *Van Asdale* that Plaintiff alleged he

5   subjectively believed the conduct violated an enumerated law. The Court should reject

6   Defendant's attempt to heighten the standard by parsing the reasonableness of Plaintiff's belief at

7   this stage.

8          Read in the context of the many other facts alleged in the Amended Complaint, Plaintiff's

9   belief was also objectively reasonable. Indeed, the precise question of whether a statute is an

10  enumerated basis for protection under SOX has been repeatedly litigated. *See, e.g., Wadler v.*

11  *Bio-Rad Labs., Inc.*, 916 F.3d 1176, 1186 (9th Cir. 2019);[7] *Baker v. Smith & Wesson, Inc.*, 40

12  F.4th 43, 48-49 (1st Cir. 2002). That this issue has been the subject of extensive litigation,

13  dispute, and confusion among lawyers (and judges) indicates it was not clearly unreasonable for

14  Plaintiff to believe Coupang's actions violated "an SEC rule or regulation" or constituted

15  "securities fraud," and thus that his whistleblowing was protected under Section 806. AC ¶¶ 24-

16  29. Even though Plaintiff's belief that Coupang's legal violations fell within the purview of

17  Section 806 was mistaken, it was still protected activity. *See Van Asdale*, 577 F.3d at 1001-02

18  (noting the purpose of the statute (to encourage disclosure) "ensures that an employee's

19  reasonable but mistaken belief that an employer engaged in conduct that constitutes a violation

20  of one of the six enumerated categories is protected.") (citations omitted).

21         Defendant may certainly question the reasonableness of Plaintiff's subjective and

22  objective beliefs through the discovery process and during his deposition, but it cannot properly

23  _____

24  [7] *Wadler* held the statutory provisions of the Foreign Corrupt Practices Act are not "rules or regulations"
    of the SEC under § 806 of SOX. 916 F.3d at 1186. *Wadler* did not address the very peculiar issue
    presented here: whether a reasonable belief that a violation of Section 13(r) of the Securities and

25  Exchange Act (15 U.S.C. 78m(r)), which require disclosures to the SEC, should be considered protected
    activity.

PLTF'S OPPOSITION TO MOTION TO DISMISS              **Outten & Golden LLP**
AMENDED COMPLAINT                                   One California Street, Suite 1250
Case No. 23-1887                                    San Francisco, CA 94111
Page 7 of 26                                        (415) 638-8800

1    dispute Plaintiff alleged his reasonable belief that the conduct he reported violated SOX.  *See* AC

2    ¶¶ 88, 91.  At this stage, before development of the factual record, the Court should accept as

3    true that it was reasonable for Plaintiff to believe Defendant's actions came within in the purview

4    of Section 806.

5           **B.     Plaintiff has alleged sufficient facts to create a dispute as to when he
                    reasonably should have known of his retaliatory termination.**
6

7           Defendant argues Plaintiff's SOX claim is untimely because he purportedly did not file

8    his OSHA charge within 180 days of when Coupang contends it communicated his termination

9    to him.  Mot. at 10.  Plaintiff agrees the 180-day "period [to file a claim with OSHA] begins to

10   run when the employer communicates an adverse employment action to the employee."  *Id.* at 9.

11   But an employer's mere mention of potential termination is insufficient to put an employee on

12   notice; to the contrary, it must be "final, definitive, and unequivocal notice."  *Corbett v. East*

13   *Energy Corp.*, ARB No. 07-00044, ALJ No. 2006-SOX-00065, at * 4 (ARB Dec. 31, 2008)

14   (citations omitted).  "'Final' and 'definitive' notice is a communication that is decisive or

15   conclusive, i.e., leaving no further chance for action, discussion, or change."  *Coppinger-Martin*

16   *v. Nordstrom, Inc.*, ARB 07-067, 2007-SOX-019, at *4 (ARB Sept. 25, 2009).  "'Unequivocal'

17   notice means communication that is not ambiguous, i.e., free of misleading possibilities."  *Id.*

18   (citations omitted).  Where, as here, there is ambiguity as to what has been communicated to the

19   employee regarding their employment status, the Court should calculate the statute of limitations

20   from the actual date of termination instead of the ambiguous notice date.  *See Snyder v. Wyeth*

21   *Pharms.*, ARB 09-008, 2008-SOX-055, at *8-11 (ARB Apr. 30, 2009) (finding initial

22   communication regarding potential end of employment relationship was ambiguous; statute of

23   limitations began to run from effective date of termination, several months after plaintiff was

24   suspended with pay pending investigation into protected complaints).

25

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 8 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1    Relying extensively on documents outside the Amended Complaint, Defendant argues

2 "Plaintiff knew or should have known he was being terminated by September 3, 2021, and

3 certainly no later than September 9." *See* Mot. at 10-11.  Specifically, Defendant relies on a

4 draft separation agreement (never executed by Plaintiff) asking him to resign by December 31,

5 2021, in return for monetary consideration, the terms of which never went into effect and did not

6 result in Plaintiff's separation on December 31.  AC ¶¶ 28-29.  Defendant also improperly relies

7 on hearsay in a letter from Plaintiff's Korean counsel, the language of which Defendant

8 attributes directly to Mr. Smith without evidence he approved the language.[8]  Finally, Defendant

9 relies on OSHA's preliminary findings letter, which has no precedential value and is an obvious

10 ploy to undermine the *de novo* review this Court must undertake.  *See* Dkt. 38, at 5-9.  For the

11 reasons described more fully in Plaintiff's Objections to Defendant's Request for Judicial Notice

12 and Incorporation by Reference, the Court should not take judicial notice of or incorporate of any

13 of these documents.  *See id*.  Even if the Court does consider these documents, however, it

14 cannot accept the truth of matters asserted therein to resolve factual disputes against Plaintiff's

15 well-pled allegations.  *See Khoja*, 899 F.3d at 999, 1014.

16    Moreover, the existence of a factual dispute cannot genuinely be disputed given

17 Plaintiff's litany of allegations indicating at the time Defendant argues Plaintiff should have been

18 on notice of his termination, Plaintiff's employment status was far from definitive or final.

19 Indeed, Defendant's significantly truncated presentation of the alleged facts presents a false

20 narrative, jumping straight from the proffered separation agreement (which Plaintiff refused to

21 sign) on September 9, 2021, to Plaintiff's termination on January 18, 2022.  Mot. at 5-6.

22 Defendant skips over the intervening four plus months of continued employment, evolving

23 negotiations regarding his status, and Coupang's investigation into Plaintiff's protected

24

25

---

[8] Defendant makes much of the word "garden leave" in this letter (Mot. at 6, 8), without evidence of its meaning in the context of the letter, or of the effect that sentence had on Plaintiff.  This hearsay should be disregarded.

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 9 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

complaints, during which Mr. Smith was operating in a state of limbo, remaining anxiously uncertain as to what action the Company ultimately might take at the conclusion of its investigation until, as Defendant admits, Plaintiff was "formally terminated . . . by Defendant on January 18, 2022 via letter." *Id.* at 6 (citing Dkt. 26 ¶ 49). Among the critical allegations Defendant ignores between when it placed Mr. Smith on administrative leave on September 3, 2021, (AC ¶ 36) and his termination in January 2022 are the following:

- After receiving the draft separation agreement, Mr. Smith continued to inquire about the current and prospective status of his employment; Coupang refused to answer. *Id.* ¶ 39.

- In late September or early October, Coupang hired King & Spaulding LLP REDACTED ████████████, which Plaintiff understood would address his whistleblower complaints. *Id.* ¶¶ 40-41.

- Plaintiff believed his employment would be preserved once Coupang's counsel understood the scope of the situation. *Id.* ¶ 39.

- REDACTED ████████████████████████████████████████████████ ██████████████████████████████████████████. *Id.* ¶¶ 40, 42.

- REDACTED ████████████████████████████████████████ ████████████████████████████████████. *Id.* ¶ 43; *Upjohn, Co. v. United States*, 449 U.S. 383 (1981).

- REDACTED ████████████████████████████████████████ ████████████████████████████████████████████. *Id.*

- In late October, Coupang's Korean legal counsel communicated they were uncertain why Coupang had placed Mr. Smith on administrative leave, but Coupang would let Mr. Smith's Korean counsel know when the investigation was completed. *Id.* ¶ 44.

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 10 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1
2
3
4
5
6
7
8

- Mr. Smith continued to reach out regarding the status of his employment and potential paths forward, including whether he could be transferred to another office or team, but Coupang failed to provide any response.  *Id.* ¶ 47.

- Throughout this period, Coupang also continued to pay Mr. Smith's salary, pay for his housing, and pay for his children's schooling.  *Id.*

- In December 2021, three plus months into Mr. Smith's leave and the investigation, Coupang paid for Mr. Smith's flight home to New York to visit his family for the holidays.  *Id.* ¶ 48.

9
10
11
12
13
14
15
16
17
18

Further, Mr. Smith's employment continued for weeks *after* the December 31, 2021 date proposed in the rejected separation agreement.  Coupang did not notify Mr. Smith until January 18, 2022, that "pursuant to Paragraph a(i) of Article 4 ('Term and Termination') . . . the Employment Agreement will be validly terminated as of January 18, 2022, (the "Termination Date") by paying sixty (60) days' base salary."  AC ¶ 49.  (Under Mr. Smith's Employment Agreement with Coupang, "Either party [could] terminate this Agreement at any time by giving the other party sixty (60) days' prior written notice (or, in the case of the Company, paying base salary in lieu of such notice).")  *Id.* n. 7.  Thus, by paying base salary in lieu of 60 days' notice, *Coupang* **acknowledged** *that it had not provided Mr. Smith notice of his termination prior to January 18, 2022.  Id.* ¶ 50.

19
20
21
22
23
24
25

These allegations refute any argument Plaintiff knew or should have known of his termination in September (or even December), as he had not received the "final, definitive, and unequivocal notice."  *See, e.g.*, *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988) (holding the communication of the company's termination decision does not end the inquiry; the "[c]ircumstances surrounding the [communication], coupled with mixed official signals conveyed to the plaintiff afterwards by the company's personnel office, are collectively sufficient to cast doubt upon whether a reasonable employee in [plaintiff's] position should have

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 11 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

known that he had been discharged."); *Avlon v. American Express Co.*, ARB No. 09-089, ALJ No. 2008-SOX-51, at *12-13 (ARB May 31, 2011) (notice of termination analysis should include consideration of pre-and post-notice context and whether it suggested a possibility termination may not occur).

Trying to divert the Court from the sufficiency of Plaintiff's allegations and this clear factual dispute, Defendant misconstrues the cases upon which it relies and ignores the holdings in those cases helpful to Plaintiff. *See, e.g.*, *Coppinger-Martin v. Solis*, 627 F.3d 745 (9th Cir. 2010) (finding where decision to terminate may have been initially unclear, it unquestionably was communicated to the Plaintiff by her *final day of work*); *English v. Whitfield*, 858 F.2d 957, 960 (4th Cir. 1988) (affirming district court's dismissal where plaintiff was explicitly told she had a period of time to find another job or resign and the event that triggered the statute of limitations was the end of her reassignment period because she had not found a new role by that date, *many months after* the initial conversation regarding her termination). Here, as in *English,* Mr. Smith received initial, ambiguous, and evolving communications regarding the status of his employment and did not know it was unequivocally final until the clearly communicated definitive notice in his termination letter. AC ¶¶ 39-44, 47-50.

The other out-of-circuit cases Defendant relies on are also distinguishable. In *Rzepiennik v. Archstone-Smith, Inc.*, the court found defendant's offer of a post-termination agreement to settle an owed bonus was adequate notice where, unlike here, there was no ongoing "discussion over the precise contours and effective date of the adverse action [failure to pay the bonus] or in which the employment action and consequences are not easy to identify." No. 07 Civ. 01243, 2008 U.S. Dist. LEXIS 23533, at *9-10 (D. Colo. Mar. 12, 2008). Here, any notice that might have been drawn from the draft separation agreement lost any definitive or unambiguous effect precisely because of the uncertainty Defendant itself created by refusing to answer questions regarding Plaintiff's employment status, forcing Plaintiff into an "employee" investigation, and

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 12 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

continuing to pay him without further elaboration, among other factors.  The lack of clarity

Plaintiff alleges about his employment status is also absent in *Abraham v. Woods Hole*

*Oceanographic Inst.*, where, although the plaintiff received a separation agreement indicating he

had 21 days to resign before receiving the package, he was simultaneously and explicitly told all

options for him involved termination by January 31, 2005.  553 F.3d 114, 118 (1st Cir. 2009)

The court held where the plaintiff received four separate notices of upcoming termination in

November 2004, this left "no doubt that he had knowledge of Defendant's alleged discriminatory

act prior to December 2004."  *Id.*

Plaintiff has sufficiently pleaded the Company's final, unequivocal, and definitive notice

of his termination came on January 18, 2022, and Defendant's extraneous documents, at best,

only create a dispute about this fact.

### C.  Plaintiff has alleged sufficient domestic conduct to create a disputed factual question regarding whether application of SOX would be extraterritorial.

Defendant next argues Plaintiff's SOX claim seeks an impermissible extraterritorial

application of the statute.  The Ninth Circuit recently held SOX's anti-retaliation provisions do

not apply extraterritorially.  *Daramola v. Oracle Am., Inc.*, 92 F.4th 833, 839 (9th Cir. 2024).

However, this does not end the inquiry because Plaintiff's employment relationship with

Coupang "involved a mix of domestic and foreign conduct."  *Id.* at 840.  The next step in the

*Daramola* analysis is to determine whether Plaintiff has alleged sufficient domestic conduct

such that "this case involves a permissible domestic application," *id.* at 839, which he clearly

has.

Ignoring the Ninth Circuit's review (and the standard set forth therein), Defendant cites to

the lower court opinion in *Daramola* to argue an "employee's permanent or principal worksite

is the key factor to consider," (Mot. at 11), and "many of Plaintiff's alleged connections to the

U.S. are untethered to any of the supposedly wrongful conduct, and thus irrelevant."  *Id.* at 13.

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 13 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1   But the language Defendant cites is not reflected in the Court of Appeals' opinion or reasoning.

2   Instead, in answering whether the locus of Daramola's employment relationship was in the

3   United States, the Ninth Circuit reviewed all of the domestic and foreign connections to his

4   employment relationship and weighed them against each other.  *See Daramola*, 92 F.4th at 841

5   (finding when "[c]onsidered together," the foreign "features of Daramola's employment

6   outweigh the domestic aspects of his work.").  Nothing in *Daramola* requires this Court to

7   consider only the U.S. connections with Plaintiff's employment that are directly tethered to

8   Defendant's legal violations.  *See id.*

9       Several factually similar SOX retaliation cases have found sufficient domestic conduct

10  where, as here, the whistleblower lived and worked abroad.  *See, e.g., O'Mahony v. Accenture,*

11  *LTD.*, 537 F. Supp. 2d 506 (S.D.N.Y. Feb. 5, 2008) (denying defendant's motion to dismiss

12  where  U.S. citizen compensated and on assignment in France by U.S. subsidiary of a foreign

13  company, raised complaints to company leadership in New York and where the underlying

14  fraud and retaliatory decisions against O'Mahony involved executives located within the U.S.);

15  *Blanchard v. Exelis Systems Corp.*, ARB No. 15-031, ALJ 2014-SOX-20 (ARB Aug. 29, 2017)

16  (allegations in complaint were sufficiently connected to the U.S. where plaintiff was  U.S.

17  citizen working at an U.S. air force base in Afghanistan, violations of U.S. laws were reported

18  to U.S.-based supervisors and termination decision was made in U.S. by U.S.-based

19  employees); *Penesso v. LCC Int'l, Inc.*, 2005 DOLSOX LEXIS 95, ALJ No. 2005-SOX-00016,

20  at *7 (ALJ Mar. 4, 2005) (denying motion to dismiss where plaintiff was  U.S. citizen employed

21  in Italy by an Italian subsidiary of an American Corporation and reported fraud which took

22  place in Italy to corporate officers in the U.S.).

23      The Amended Complaint proffers a litany of allegations regarding the domestic nature of

24  Plaintiff's employment relationship and Defendant's conduct, such that prohibited

25  extraterritorial application of SOX should not be the basis for dismissal at this stage.  Among

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 14 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

other allegations contained in the Amended Complaint related to the domestic (non-extraterritorial) nature of Plaintiff's claims are the following:

- At all relevant times, Defendant was a publicly traded company with registered securities, incorporated in Delaware, and was directly involved in the management of its wholly owned subsidiary, Coupang Corp. in Korea (AC ¶¶ 2, 12);

- Defendant, or its affiliates with whom Plaintiff worked and communicated, maintained a physical presence and conducted business in California and Washington state (*id.* ¶¶ 13-17);

- Plaintiff's employment was governed by California state law (*id.* ¶ 19)[9];

- Plaintiff reported what he reasonably believed to be violations of U.S. compliance, securities and other laws to leadership sitting in the U.S. (*id.* ¶¶ 10, 24-31 46);

- Defendant's retaliatory decisions at issue, including the investigation into Mr. Smith's actions as a Coupang employee conducted by U.S. legal counsel and the decision to terminate Mr. Smith's employment, were made by and/or with the review and approval of individuals in Washington and California, including Coupang's Deputy General Counsel and Corporate Secretary (*id.* ¶¶ 41, 43, 49); and

- Defendant's counsel expressly stated the termination decision was not governed by Korean law, but rather Plaintiff's employment agreement governed by California law (*id,* ¶¶ 45, 52; Mot. Ex. 2). [10]

---

[9] Similarly, Plaintiff's Equity Incentive Plan was governed by U.S. laws and regulations (AC, fn. 4); Plaintiff received a Coupang Employee Manual from the U.S. that applied to employees on assignment. (*id.* ¶ 20); and he received U.S. healthcare through Cigna's U.S. Global Benefits plan (*id.*).

[10] Contrary to Defendant's repeated assertions (Mot. at 1-2, 12), Plaintiff's employment relationship was not broadly governed by Korean law.  The Korean law provision in the Letter of Assignment provided only that Korean law would apply to compensation, housing, and other in-country issues.  The Coupang-drafted employment agreement's choice of law provision – which tied Plaintiff to substantial obligations under California law – was not superseded by the Assignment.

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 15 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1     These facts, considered together, demonstrate "a substantial nexus to the United States,"

2     which outweigh the foreign connections making it appropriate for the Court to sustain his claim

3     under §1514A of Sarbanes-Oxley Act." *Penesso*, ALJ No. 2005-SOX-00016, at *7.

4     Defendant's citations are distinguishable. *See, e.g.*, *Carnero v. Boston Sci. Corp.*, 433 F.3d 1,

5     2-3 (1st Cir. 2006) (plaintiff-employee was Argentinian citizen, hired by an Argentinian

6     company, assigned to work for a Brazilian company; employment agreement governed by

7     Argentina law; payment was by foreign subsidiaries in pesos; complaints about fraudulent

8     conduct did not involve failure to properly disclose per U.S. securities laws and rules); *Ulrich v.*

9     *Moody's Corp.*, No. 13 Civ. 0008, 2014 U.S. LEXIS 138082, at *22, 45 (S.D.N.Y. Sept. 30,

10    2014) (*only* connections alleged were plaintiff's American citizenship and "conclusory,"

11    "speculative" allegation that retaliation was orchestrated by managers in New York; all alleged

12    protected activity nonpublic and unrelated to U.S. law).  Moreover, "[i]t is possible that during

13    discovery . . . further activities relevant to this case which took place in the United States will

14    come to light, making the claim for jurisdiction under § 1514A even more persuasive."

15    *Penesso*, ALJ No. 2005-SOX-00016, at fn. 2.

16    Defendant argues Plaintiff is attempting to falsely create a more substantial nexus to the

17    U.S. by intentionally misnaming the various Coupang corporate entities (Mot. at 7-8, 12), but as

18    discussed in Plaintiff's Motion to File Corrected Amended Complaint (Dkt. 35), the misnaming

19    was an inadvertent error Plaintiff has sought to correct.[11]  Further, for the reasons described in

20    Plaintiff's Objections, the Court should not take judicial notice of the documents Defendant

21    contends conclusively establish the corporate relationship between various Coupang entities and

22    their respective connections to the U.S.  Dkt. 38, at 10-14.

23

24    [11] Although the Corrected Amended Complaint is not currently the operative pleading, Plaintiff urges the
      Court to consider it with respect to the six instances where Plaintiff seeks to change "Coupang Global

25    LLC" to "Coupang LLC," to avoid confusion regarding the specific corporate entity and eliminate a moot
      argument.

PLTF'S OPPOSITION TO MOTION TO DISMISS             **Outten & Golden LLP**
AMENDED COMPLAINT                                  One California Street, Suite 1250
Case No. 23-1887                                   San Francisco, CA 94111
Page 16 of 26                                      (415) 638-8800

1    Finally, Defendant argues "Plaintiff's failure to delineate which 'Coupang' entity

2  allegedly undertook each alleged act is fatal to his claims." Mot. at 13.  Plaintiff has pleaded

3  detailed allegations regarding the various corporate entities involved in the relevant events,

4  including Coupang LLC, Coupang Inc., and Coupang Global LLC, as well as the identity of

5  specific Coupang executives in the U.S. who were involved, including those to whom he

6  reported his concerns and the individual(s) responsible for the retaliatory decisions at issue. *See,*

7  *e.g.*, AC ¶¶ 31, 41, 49.  Plaintiff need not specifically allege which Coupang entity employed

8  each of these executives (*see* Mot. at 5) at this stage.  Questions regarding the degree to which

9  these entities are interrelated will be born out during discovery. *See Garvey v. Admin. Rev. Bd.*,

10  56 F.4th 110, 128 (D.C. Cir. 2022) (situations may exist where relationship between an

11  employee who works overseas and U.S. parent company are sufficiently "intertwined [for] a

12  domestic application of Section 806").

13    For the foregoing reasons, this Court should find Plaintiff has alleged sufficient domestic

14  contacts with his employment, at this stage, to proceed to discovery on his SOX claim.

15  **II.    Plaintiff Has Stated A Claim For Wrongful Termination Under Washington Law.**

16    Finally, Coupang argues Plaintiff's claim for wrongful termination in violation of public

17  policy (WTVPP) fails because (1) Plaintiff has not alleged a clear public policy against

18  terminating employees in retaliation for whistleblowing (Mot. at 20), and (2) the claim should

19  not be applied extraterritorially. *Id.* at 22.  Both arguments are unavailing.

20    **A.    A clear public policy against whistleblower retaliation exists in Washington.**

21    Plaintiff alleges his wrongful termination is premised on the public policy against

22  terminating an employee for whistleblowing or in retaliation for reporting employer misconduct,

23  and points to SOX and Washington common law.  AC ¶¶ 86, 91.

24    Federal statutes such as SOX can serve as the source of a Washington public policy in

25  support of a WTVPP claim. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 234, 685 P.2d

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 17 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1081 (1984).  Independent of SOX, the Washington Supreme Court has recognized a broad

public policy of protecting whistleblowers.  *See, e.g.*, *Gardner v. Loomis Armored*, 128 Wn.2d

931, 936, 913 P.2d 377 (1996) (recognizing WTVPP claims "where employees are fired in

retaliation for reporting employer misconduct, i.e., whistleblowing.'"); 6A Wash. Pattern Jury

Instr. Civ. 330.50 (cmt.) (7th ed) ("unlawful to terminate an employee . . . in retaliation for

reporting employer misconduct."); *Karstetter v. King County Corr. Guild*, 193 Wn.2d 672, 684-

85, 444 P.3d 1185 (2019) (reversing dismissal of plaintiff-attorney's WTVPP claim because "in-

house attorneys may pursue wrongful discharge . . . claims against their client employers" for

whistleblower retaliation).

　　　　To the extent Defendant cites cases that do not directly support Plaintiff's WTVPP claim,

(*see* Mot. at 23, citing *Dicomes v. State*, 113 Wn. 2d 612, 618, 782 P.2d 1002 (1989), which

recognized Washington's public policy of protecting employees who are fired for

whistleblowing), they are entirely distinguishable.  *See, e.g.*, *Roe v. TeleTech Customer Care*

*Mgmt. (Colo.) LLC*, 171 Wn.2d 736, 758-59, 257 P.3d 586 (2011) (no broad public policy

supporting individual right to use medical marijuana where solitary statute identified in support

focused on *physicians'* ability to prescribe it, and use remained illegal under federal law);

*Sedlacek v. Hillis*, 145 Wn.2d 379, 390, 36 P.3d 1014 (2001) (refusing to adopt provision of

Americans with Disabilities Act as Washington public policy where Washington has an

analogous state statute (the Washington Law Against Discrimination ("WLAD")) that expressly

differed from federal statute, and the interpretation plaintiff urged was rejected in both the

Washington Administrative Code and recent Supreme Court decision).[12]

---

[12] Defendant relies on two unpublished Court of Appeals opinions from 2005, *Childress v. Watson Agency, Inc.*, 2005 Wash. App. LEXIS 3106, *8-10 (2005) and *Alaiyan v. Insightful Corp.*, 128 Wash. App. 1002 (2005), which cannot be cited.  *See* Wash. GR 14.1; *Hanson v. MGM Resorts Int'l*, 2017 U.S. Dist. LEXIS 113690, *7, fn. 1 (W.D. Wash. July 20, 2017) (this "Court follows GR 14.1 as a matter of comity.").

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

**B.      Plaintiff may prevail on his WTVPP claim if relief is foreclosed under SOX.**

Even if the Court were to dismiss Plaintiff's SOX claim, Plaintiff's WTVPP claim should survive as wrongful termination claims in Washington are not narrowly confined to the exact contours of any statute that may serve as evidence of the underlying public policy.  Instead, a "statute may provide a public policy mandate for purposes of a wrongful termination claim even where the employer's conduct is beyond the reach of the statute's remedies." *Roe*, 171 Wn.2d at 756; *see also e.g.*, *Roberts v. Dudley*, 140 Wn.2d 58, 72-73, 992 P.2d 901 (2000) (recognizing clear public policy against sex discrimination governing all employers in Washington, even though WLAD only applies to employers with at least eight employees, and permitting Roberts to pursue a WTVPP claim, despite Dudley not meeting the eight-employee threshold); *Sedlacek*, 145 Wn.2d at 388 (noting *Roberts* held "a broad public policy articulated in a statute could extend beyond the reach of the statutory remedies").  Thus, Plaintiff's WTVPP claim can provide a remedy even if he ultimately does not prevail on his SOX claims.

**C.      Defendant misstates Plaintiff's burden to establish a clear public policy.**

Defendant tries to dodge this binding precedent by reframing Plaintiff's allegations and improperly heightening Plaintiff's burden.  Specifically, Defendant contends Plaintiff must "allege the existence of a 'clear public policy' that precludes Washington employers from terminating employees in retaliation for allegedly reporting (in Korea) purported violations (in Korea) of the Iranian Transactions and Sanctions Regulations or the Securities Exchange Act." Mot. at 20.  This drastically misconstrues Plaintiff's actual burden to sufficiently plead a WTVPP claim.  *See Karstetter*, 193 Wn.2d at 686 (former in-house attorney's short, plain allegations "he assisted the investigation of a whistle-blower complaint and . . . was fired for doing so," was sufficient to survive a 12(b)(6) challenge).

Washington law does not (as Defendant suggests) require Plaintiff to articulate a highly fact-specific public policy that incorporates plaintiff's location when he reported employer

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 19 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1    misconduct and the exact nature of the employer misconduct he reported.  *See* Mot. at 20.

2    Defendant's own cases establish that *any* clear public policy – whether or not related to

3    plaintiff's employment or specific conduct – can serve as the basis for a WTVPP claim.  *See,*

4    *e.g., Danny v. Laidlaw Transit Servs., Inc.*, 165 Wn.2d 200, 220-21, 193 P.3d 128 (2008)

5    ("state's clear and forceful public policy against domestic violence supports liability for

6    employers who thwart employees' efforts to protect themselves from domestic violence," even

7    though none of the statutes cited in support of the public policy addressed the employment

8    context); *Roe*, 171 Wn.2d at 756-57 ("though MUMA does not imply a cause of action against

9    an employer who discharges an employee for using medical marijuana, it could still provide

10   basis for Roe's wrongful termination claim.").

11       **D.    WTVPP claims extend to employment decisions made in Washington State.**

12       Defendant argues the "narrow public policy exception"[13] to at-will employment "should

13   not be applied extraterritorially," but cite no cases limiting WTVPP claims to Washington

14   residents.  Mot. at 22.  Instead, Defendant cites to a California district court case undertaking an

15   extraterritoriality analysis under California state law.  *See id.* at 23 (quoting *Cave Consulting*

16   *Grp., Inc. v. Truven Health Analytics Inc.*, 2017 WL 1436044, at *7 (N.D. Cal. Apr. 24, 2017)).

17   Defendant further argues it "is insufficient" Plaintiff alleges the retaliatory investigation into him

18   was overseen from, and the decision to terminate his employment was made in, Seattle (AC ¶¶

19   41, 49), but again, cite no law for the proposition that retaliatory decision making made in

20   Washington is insufficient to state a WTVPP claim.  Mot. at 22.

21       The Washington Supreme Court has not addressed how WTVPP claims apply to out-of-

22   state residents/workers.  Defendant invites this Court to be the first in Washington to do so.

23   _____

     [13] Washington's WTVPP claim is not as narrow as Defendant would have the Court believe.  The
24   Washington Supreme Court has expanded the exception multiple times.  *See, e.g., Smith v. Bates*
     *Technical College*, 139 Wn.2d 793, 803, 991 P.2d 1135 (2000) (holding "cause of action for wrongful
25   termination in violation of public policy extends to *all* employees and may be brought 'notwithstanding
     the existence of other remedies.'").

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 20 of 26                                                  **Outten & Golden LLP**
                                               One California Street, Suite 1250
                                                  San Francisco, CA 94111
                                                       (415) 638-8800

When presented with novel questions regarding WTVPP claims, the Washington Supreme Court has looked to case law interpreting the WLAD as "analogous" and "persuasive authority." *See Cagle v. Burns & Roe*, 106 Wn.2d 911, 918, 726 P.2d 434 (1986) (holding discriminatory termination in violation of the WLAD "is analogous to wrongful termination of employment in violation of public policy, and is therefore persuasive authority" regarding availability of emotional distress damages). It is clear out-of-state plaintiffs may bring claims under the WLAD against employers in Washington. *See, e.g., Burnside v. Simpson Paper Co.,* 123 Wn.2d 93, 99, 864 P.2d 937 (Wash. 1994) ("limiting the statute's application to Washington inhabitants would effectively allow Washington employers to discriminate freely against non-Washington inhabitants, thus undermining the fundamental purpose of the act, deterring discrimination."); *Guillot v. Potlatch Corp.*, 2004 U.S. Dist. LEXIS 33098, at *8 (E.D. Wash. 2004) (recognizing "clear authority that a plaintiff may bring a civil action based on 49.60 *et. seq*. to remedy an adverse employment action taken by a Washington employer against an employee who neither resides nor works in Washington"). Thus, Washington courts have permitted claims involving discriminatory/retaliatory termination decisions affecting out-of-state employee-plaintiffs in an analogous context. Absent a definitive ruling from the Supreme Court or any clear authority to the contrary (Defendant cites none), this Court should not break from this persuasive guidance.

　　To do otherwise, and limit the reach of Plaintiff's WTVPP claim, would undermine the State's interest. The tort of wrongful discharge "embodies a strong state interest in protecting against violations of public policy." *Smith*, 139 Wn.2d at 803; *see also id.* at 801 (it "operates to vindicate the *public interest* in prohibiting employers from acting in a manner contrary to fundamental public policy."). This strong state interest is not served by permitting employment decisions made in Washington which violate public policy to go unchallenged simply because the plaintiff works out-of-state. Further, "Washington's whistle-blower provisions are intended to encourage those with knowledge of institutional wrongs to come forward in order to safeguard

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 21 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1   the public." *Karstetter*, 193 Wn.2d at 685.  "Such protection is based on . . . the commonsense

2   notion that employers should abide by the law and the intrinsic importance of fairness and justice

3   in protecting individuals trying to 'do the right thing.'"  *Id.*  It would undermine Washington's

4   policy of encouraging and protecting whistleblowers to come forward and do the right thing if

5   employers may freely retaliate against them from Washington.

6       For the foregoing reasons, Defendant has identified no basis for dismissing Plaintiff's

7   well-pled WTVPP claim under Washington law.

8   **III.    Plaintiff Has Adequately Pleaded A Claim For Violation Of The Covenant Of Good
         Faith And Fair Dealing.**

10      Defendant argues Plaintiff's claim for breach of the implied covenant of good faith and

11  fair dealing ("BCGFFD") must be dismissed because a terminated employee cannot state a claim

12  for a breach flowing from their termination where the employment was at-will.  Mot. at 19.

13  However, this argument relies only on cases holding a plaintiff cannot succeed on a claim for

14  BCGFFD *related to an implied promise not to terminate except for cause* where the employment

15  contract contains express "at-will" language.  *See id.* (citing *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.

16  4th 317, 351 (Cal. 2000); *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 392 (Cal. 2006)).[14]

17      Defendant's overly simplistic analysis ignores not only the relevant law, but the actual

18  thrust of Plaintiff's allegations.  In addition to the duties imposed on contracting parties by the

19  express terms of their agreement, the law implies in every contract a covenant of good faith and

20  fair dealing.  *Fleet v. Bank of America N.A.* 229 Cal. App. 4th 1403, 1409 (2014).  BCGFFD

21  claims are "a supplement to the express contractual covenants, to prevent a contracting party

22  from engaging in conduct which (while not technically transgressing the express covenants)

23  frustrates the other party's rights to the benefits of the contract."  *Racine & Laramie, Ltd., Inc. v.*

24

25  _____

[14] The employment agreement has a California choice of law provision and therefore, the parties appear to
agree California law applies to this claim.

PLTF'S OPPOSITION TO MOTION TO DISMISS                    **Outten & Golden LLP**
AMENDED COMPLAINT                                        One California Street, Suite 1250
Case No. 23-1887                                          San Francisco, CA 94111
Page 22 of 26                                               (415) 638-8800

1  *Calif. Dept. of Parks & Recs.* 11 Cal. App. 4th 1026, 1031-1032 (1993).  "[W]here a contract

2  confers on one party a discretionary power affecting the rights of the other, a duty is imposed to

3  exercise that discretion in good faith and in accordance with fair dealing."  *King v. U.S. Bank,*

4  *NA,* (2020) 53 Cal.App.5th 675, 706-707.

5       *Guz, supra,* makes clear where there are other express terms in the employment contract,

6  they apply to the employer's conduct.  *See Guz*, 24 Cal. 4th at 336-37.  Neither *Guz* nor *Dore* did

7  away with BCGFFD as a cause of action related to a discharge, even in the face of an at-will

8  employment contract, where a plaintiff alleges a violation of specific contract provisions.  *See id.*

9  at 350.  *Guz* also notes "the covenant might be violated if termination of an at-will employee was

10  mere pretext to cheat the worker out of another contract benefit to which the employee was

11  clearly entitled . . ."  *Id.* at 353, n.18.;[15] *see also Liu v. Amway Corp*., 347 F.3d 1125, 1138 (9th

12  Cir. 2003) (BCGFFD can arise from an express employment contract).

13       The allegations in the Amended Complaint have nothing to do with an implied promise

14  not to terminate for cause; rather, they relate to Defendant's unfair interference with Plaintiff's

15  employment contract and its actions in depriving him of its benefits by terminating him for

16  performing its terms.  Plaintiff specifically references Articles 2 and 9 of his employment

17  agreement, which required him to comply with all rules and regulations of any regulatory

18  authority or agency and to perform in good faith with a high duty of care to his duties.  AC ¶¶

19  95-104.

20       In *King, supra,* the plaintiff and U.S. Bank agreed to a performance-based bonus plan,

21  but the Bank terminated him before paying an earned bonus. U.S. Bank, focusing on the at-will

---

22  [15] Alternatively, if Plaintiff's BGFFD claim is found insufficient, then Plaintiff seeks leave to amend to
23  add a breach of contract claim.  In *Rosenstein v. PacifiCorp*, the plaintiff alleged a Certificate of
Compliance he executed created a contract promising he would not suffer adverse consequences for good
24  faith reporting of a violation of the Code of Conduct.  No. 23 Civ. 136, 2023 U.S. Dist. LEXIS182269, at
*12, *16 (D. Or. Oct. 5, 2023).  On the limited record at the 12(b)(6) stage, the court refused to reject
25  Plaintiff's claim that his termination for reporting fraud also constituted breach of contract and denied the
motion to dismiss.  *Id.* at *17.

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 23 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

nature of plaintiff's employment, argued he was no longer eligible to receive the bonus following his termination.  The Court of Appeals affirmed the jury's verdict that U.S. Bank breached the implied covenant, finding "but for U.S. Bank's bad faith act of terminating King to avoid paying him the bonus, King would have received it."  53 Cal.App.5th at 706.  *King* distinguished the facts in *Guz*, noting the at-will nature of King's employment was not controlling because the challenged breach was *not* the wrongful termination of an at-will employee: "[T]he [implied] covenant prevents a party from acting in bad faith to frustrate the contract's actual benefits.  *Id.* at 707-08 (quoting *Guz*, 24 Cal.4th at 353 n.18); *see also Barker v. Stoli Grp. USA, LLC*, No. 20 Civ. 2170, 2022 U.S. Dist. LEXIS 98730, at *7-8 (E.D. Cal. June 1, 2022) (denying summary judgment on BCGFFD claim where rational factfinder could conclude termination was pretextual attempt to deprive plaintiff of a contract benefit).

Plaintiff alleges his termination was a pretextual, bad faith maneuver to deprive him of his rights under the employment contract, including his right (and obligation) to make best efforts to uphold Articles 2 and 9, even if they caused discomfort for Defendant.  AC ¶¶ 101-103.  Thus, Plaintiff adequately alleges elements of a BCGFFD claim and Defendant's assertion otherwise is meritless.

## IV.   No Grounds Exist For Dismissal Of Plaintiff's Labor Code § 1102.5 or *Tameny* Claims.

Plaintiff's Labor Code § 1102.5 claim survives because he adequately alleges protected activity in California and Defendant's connections to California.  AC ¶¶ 13-15, 17, 19, 24, 31, 41, 45, 52.  Further, Defendant fails to cite a case holding § 1102.5 does not apply where, as here, Plaintiff's employment contract contained a California choice-of-law provision.  *See id.* ¶¶ 19, 45, 52.  Defendant has not met its burden to justify dismissal.

If either Plaintiff's SOX of §1102.5 claims survive, then his claim for wrongful discharge in violation of public policy ("*Tameny*") claim also survives.  Both SOX and § 1102.5 provide

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 24 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800

1    clearly established public policy, and Defendant's citations to *City of Moorpark v. Superior Ct.*,

2    18 Cal. 4th 1143, 1159 (1998) and similar cases (Mot. at 18) wrongly assume Plaintiff's statutory

3    claims will be dismissed, rendering them irrelevant.

4    **V.      The Court Should Not Deny Plaintiff Leave To Amend.**

5          If the Court finds the allegations contained in Plaintiff's Amended Complaint fail with

6    respect to any claim, the Court should allow Plaintiff to amend to cure any deficiencies.

7    "Requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Sevr.*, 572

8    F.3d 962, 972 (9th Cir. 2009); *see also* Fed. R. Civ. P. 15(a)(2)).  The Court must grant leave "if

9    it appears at all possible that the plaintiff can correct the defect," or if it can "conceive of facts

10   that would render plaintiff's claim viable." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

11   701 (9th Cir. 1988).  Amendment would not be futile, and this Court should not deny Plaintiff

12   leave to amend.[16]

13                                **CONCLUSION**

14         For the forgoing reasons, the Court should deny Defendant's Motion to Dismiss the

15   Amended Complaint.

16

17                         **LOCAL RULE 7(E) CERTIFICATION**

18         I certify that this memorandum contains 8,245 words, in compliance with the Local Civil

19   Rules.

20

21

22   _____

[16] Defendant's reliance on *Schreiber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393 (9th Cir.
23   1986) and *Bybee v. Int'l Bhd. of Teamsters*, No. 22 Civ. 16280, 2023 U.S. App. LEXIS 29754, at * 6-7
     (9th Cir. 2023) is misplaced.  In *Schreiber*, the Ninth Circuit held the lower court erred in not allowing
24   plaintiff to amend because it did not determine the "allegation of other facts could not possibly cure the
     deficiencies."  806 F.2d at 1401-02.  In *Bybee*, the Ninth Circuit narrowly found the allegations could not
25   be cured because the plaintiff's claim arose from a collective bargaining agreement, not an industry
     retirement plan.  2023 U.S. App. LEXIS 29754, at *6-7.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Respectfully submitted,

Dated:    April 8, 2024

By:   /s/ *Cassandra Lenning*

Cassandra Lenning (WSBA #54336)
Jennifer Schwartz*
**OUTTEN & GOLDEN LLP**
One California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 638-8800
Email: clenning@outtengolden.com
Email: jschwartz@outtengolden.com

Kendall Onyendu*
**OUTTEN & GOLDEN LLP**
685 3rd Ave, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Email: konyendu@outtengolden.com

Michael C. Subit (WSBA #29189)
**FRANK FREED SUBIT & THOMAS LLP**
705 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone: (206) 682-6177
Email: msubit@frankfreed.com

*admitted *pro hac vice*

*Attorneys for Plaintiff*

PLTF'S OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT
Case No. 23-1887
Page 26 of 26

**Outten & Golden LLP**
One California Street, Suite 1250
San Francisco, CA 94111
(415) 638-8800