HON. RICHARD A. JONES

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| PHILIP SMITH, | Case No. 2:23-cv-01887-RAJ |
| Plaintiff, | |
| vs. | **COUPANG, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |
| COUPANG, INC., | |
| Defendant. | NOTING DATE:  April 19, 2024 |

REPLY TO MOT. TO DISMISS AMEND. COMPL.
(Case No. 23-cv-1887-RAJ)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................2

I. PLAINTIFF'S SOX CLAIM FAILS ...........................................................................2

    A. Plaintiff Fails to Establish That the AC Pleaded Conduct Protected by SOX ................................................................................................................2

    B. Plaintiff's Opposition Confirms That His SOX Claim Is Untimely ............4

    C. Plaintiff Seeks Extraterritorial Application of SOX ....................................5

II. PLAINTIFF'S WASHINGTON CLAIM FAILS ........................................................8

    A. Plaintiff Fails to Plead a Clear Mandate of Washington Public Policy .......8

    B. Even if SOX Is a Clear Mandate of Washington Public Policy, Plaintiff Fails to State a Claim ...................................................................................9

    C. Plaintiff Has Failed to Show Washington Law Applies ............................10

III. PLAINTIFF'S CALIFORNIA CLAIMS FAIL .........................................................11

    A. Plaintiff's Covenant of Good Faith and Fair Dealing Claim Is Foreclosed ..................................................................................................11

    B. California Labor Law Does Not Apply Here ............................................12

CONCLUSION ....................................................................................................................12

REPLY TO MOT. TO DISMISS AMEND. COMPL.
(Case No. 23-cv-1887-RAJ) - i

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Andaya v. Atlas Air, Inc.*,
  2012 WL 1871511 (S.D.N.Y. Apr. 30, 2012)..................................................................2

*Barker v. Stoli Grp. USA, LLC*,
  2022 WL 1811087 (E.D. Cal. June 2, 2022) ................................................................11

*Blanchard v. Exelis Systems Corp.*,
  2017 WL 3953474 (ARB Aug. 29, 2017)......................................................................8

*Brinker v. Axos Bank*,
  2023 WL 4535529 (S.D. Cal. July 13, 2023) .................................................................4

*Burnside v. Simpson Paper Co.*,
  123 Wash. 2d 93 (1994)...............................................................................................10

*Clark v. Resistoflex Co.*,
  854 F.2d 762 (5th Cir. 1988) .........................................................................................5

*Colesanti v. Becton Dickinson*,
  2019 WL 4043957 (D.R.I. July 19, 2019) .....................................................................2

*English v. Gen. Dynamics Mission Sys., Inc.*,
  808 F. App'x 529 (9th Cir. June 9, 2020).....................................................................12

*Gardner v. Loomis Armored, Inc.*,
  128 Wash. 2d 931 (1996)...............................................................................................9

*Guz v. Bechtel Nat'l Inc.*,
  24 Cal. 4th 317 (2000) .................................................................................................11

*Karstetter v. King County Corr. Guild*,
  193 Wash. 2d 672 (2019)...............................................................................................8

*King v. U.S. Bank, NA*,
  53 Cal. App. 5th 675 (2020) ........................................................................................11

*Neely v. Boeing Co.*,
  2018 WL 2216093 (W.D. Wash. May 15, 2018)...........................................................4

*Northrop Grumman Sys. Corp. v. United States Dep't of Lab., Admin. Rev. Bd.*,
  927 F.3d 226 (4th Cir. 2019) .........................................................................................3

REPLY TO MOT. TO DISMISS AMEND. COMPL.
(Case No. 23-cv-1887-RAJ) - ii

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

*O'Mahony v. Accenture, LTD.*,
   537 F. Supp. 2d 506 (S.D.N.Y. Feb. 5, 2008)..................................................................7

*Penesso v. LCC Int'l, Inc.*,
   2005 WL 4889018 (ALJ Mar. 4, 2005) ..........................................................................8

*Roberts v. Dudley*,
   140 Wash. 2d 58 (2000).................................................................................................10

*Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC*,
   171 Wash. 2d 736 (2011)............................................................................................9, 8

*Sedlacek v. Hillis*,
   145 Wash. 2d 379 (2001)..........................................................................................8, 10

*Sturdivant v. Chem. Waste Mgmt., Inc.*,
   2020 WL 1083212 (N.D. Ala. Mar. 5, 2020) .................................................................3

*Ulrich v. Moody's Corp.*,
   2014 WL 12776746 (S.D.N.Y. Mar. 31, 2014) ..............................................................7

*Van Asdale v. International Game Technology*,
   577 F.3d 989 (9th Cir. 2009) .........................................................................................7

**Rules/Statutes**

17 C.F.R. § 240.13a-15(f)............................................................................................................3

17 C.F.R. § 249.310 ....................................................................................................................3

18 U.S.C. § 1514A...............................................................................................................2, 3, 4

California Labor Code § 1102.5 .....................................................................................1, 11, 12

Sarbanes-Oxley Act ............................................................................................................ *passim*

REPLY TO MOT. TO DISMISS AMEND. COMPL.
(Case No. 23-cv-1887-RAJ) - iii

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

# INTRODUCTION

Plaintiff's response does not adequately address any of the fundamental—and fatal—flaws in the Amended Complaint ("AC").

***SOX***.  Plaintiff fails to rebut any of the three flaws fatal to his Sarbanes-Oxley Act ("SOX") claim.  As to "protected activity," Plaintiff seeks to expand SOX to cover communications not protected under the statute because he allegedly "reasonably believed" they were protected.  That is not the standard.  He also attempts to state a claim based upon various types of "fraud" without sufficiently pleading the underlying elements.  On timeliness, Plaintiff himself threatened in September 2021 to bring a SOX claim based on his "termination."  He cannot now argue his claim was not then ripe.  Finally, Ninth Circuit precedent affirms that the extraterritoriality of a SOX claim turns on the "locus," i.e., the place, of the employment relationship.  Here, that is Korea.

***Washington***.  Plaintiff's attempts to create new Washington law fail at every turn.  SOX has never been recognized as *Washington* public policy.  But even if it were, Plaintiff's claim fails because the conduct Plaintiff challenges is not protected by SOX.  Plaintiff also has not shown that this "Washington public policy" claim applies here; the Washington public simply has no interest in a Korean employee's termination by a Delaware-incorporated and Korean-headquartered company.

***California***.  Plaintiff all but concedes that his claims under California Labor Code § 1102.5 and under California common law for wrongful termination fail.  His response does not substantively engage with Coupang's showing that this would be an improper extraterritorial application of those laws.  Next, California law forecloses a claim for breach of good faith and fair dealing where, as here, the employment relationship is at will.  Plaintiff attempts to invoke an exception to this principle, but that exception is inapplicable because Plaintiff alleges he was terminated for purported whistleblowing, not to avoid paying earned compensation.

Because Plaintiff cannot plead his way around these fatal flaws—as he has already attempted to do—his AC should be dismissed with prejudice.

REPLY TO MOT. TO DISMISS AMEND. COMPL.
(Case No. 23-cv-1887-RAJ) - 1

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

# ARGUMENT

## I. PLAINTIFF'S SOX CLAIM FAILS

### A. Plaintiff Fails to Establish That the AC Pleaded Conduct Protected by SOX

Plaintiff's Opposition fails to establish that he pleaded conduct protected by SOX.

*First*, Plaintiff asserts that "he identified and reported risks related to bank and wire fraud." Opp. 4. The only allegation on these fraud theories is that Plaintiff reported "risks related to" (but not constituting) "bank, wire, and securities fraud." AC ¶ 24. This conclusory allegation is solely about reporting "risks," which is not protected under SOX. *See* 18 U.S.C. § 1514A (requiring reporting of conduct that "the employee reasonably believes constitutes a violation").

Separately, Plaintiff asserts that he "indisputably alleged he reasonably believed" that Defendant's purported failure to disclose alleged transactions with a non-US Iranian embassy "constituted fraud on Coupang's shareholders," Opp. 4 (quoting AC ¶ 25). Plaintiff then cites allegations that he internally reported this failure to disclose and "sought advice from…advisors to Defendant" regarding said failure. Opp. 4 (citations omitted). The AC further alleges that Plaintiff's "review" that lead to the identification of these transactions began in "mid-May 2021," AC ¶ 24, and that in June, September, November, and December 2021, Defendant reported transactions with the Iranian embassy in SEC filings, *id*. ¶ 46. Even if true, such allegations are insufficient.

These allegations do not state a SOX claim based on shareholder fraud. Plaintiff has not pleaded: a misrepresentation; a *material* misrepresentation; or a specific intent to defraud. *See, e.g.*, *Andaya v. Atlas Air, Inc.*, 2012 WL 1871511, at *4 (S.D.N.Y. Apr. 30, 2012) (dismissing SOX claim where "[w]hat is missing from these allegations is criminal conduct, shareholder fraud, or fraudulent intent").[1] Any "misrepresentation" from a one month delay in disclosing "hundreds" of transactions involving Defendant, an "e-commerce retailer," AC ¶ 2, was not material. *See,*

---

[1] Plaintiff claims that it is "misleading" to suggest he is required to allege fraud elements, even if his SOX claim is based on such a violation. Opp. 4, n.3. But this and other caselaw shows he must. Mot. 11-13.

REPLY TO MOT. TO DISMISS AMEND. COMPL.  
(Case No. 23-cv-1887-RAJ) - 2

QUINN EMANUEL URQUHART & SULLIVAN, LLP  
1109 First Avenue, Suite 210  
Seattle, Washington 98101  
(206) 905-7000

*e.g.*, *Colesanti v. Becton Dickinson*, 2019 WL 4043957, at *8 (D.R.I. July 19, 2019) ("[C]ourts have consistently held that an activity is not SOX-protected where it involves disclosure of conduct that is innocuous or trivial, or where it bears only a tenuous relationship to shareholder interests…."). And Plaintiff himself alleges that Defendant *investigated* this alleged failure to disclose and then began to *cure* it *the next month*. *See, e.g.*, AC ¶¶ 31, 46. Plaintiff has not pleaded at all, let alone plausibly, a specific intent to defraud. *See Northrop Grumman Sys. Corp. v. United States Dep't of Lab., Admin. Rev. Bd.*, 927 F.3d 226, 233 (4th Cir. 2019) (affirming dismissal of SOX claim based on shareholder fraud where plaintiff did not allege "false representations of material fact intended to deceive shareholders"); *Sturdivant v. Chem. Waste Mgmt., Inc.*, 2020 WL 1083212, at *5 (N.D. Ala. Mar. 5, 2020) (dismissing same where plaintiff did not allege "a material misrepresentation or omission with the specific intent to deceive").

*Second*, Plaintiff argues that because Section 78m(r)(3) of the Securities and Exchange Act itself—a statute, codifying Section 13(r) of that Act—provides for disclosure of transactions with the Iranian government, is "replete with references to requirements and guidelines regarding disclosures," and is "entwined with SEC rules," Plaintiff "belie[ved]" that the conduct alleged constituted a failure to disclose in violation of an SEC "rule or regulation,"[2] and this Court "should not…overly dissect[]" the matter. Opp. 5. Plaintiff also claims his (admittedly incorrect) belief—that the Act itself is one of the categories listed in SOX—is sufficient to state a claim. Opp. 6-8.[3] Plaintiff cites no authority for these novel propositions that are foreclosed by *Van Asdale v. International Game Technology*: "an employee's communications *must* definitively and

---

[2] Plaintiff identifies two SEC regulations in his brief. The first (*see* Opp. 5, n.4) establishes the "form [that] shall be used for annual reports" and the filing period, 17 C.F.R. § 249.310; but Plaintiff does not allege communications or violations about the timing and formatting of Coupang's annual reports. The second (Opp. 6) defines "[t]he term internal control over financial reporting," 17 C.F.R. 240.13a-15(f), but that is likewise simply not at issue here. Plaintiff also gestures toward an SEC rule "requiring certain corporate officers to certify that…disclosures… are truthful, reliable, and effective." Opp. 6. But Plaintiff has not alleged that he communicated with Defendant about a failure to provide such a certification.

[3] Plaintiff acknowledges that "the precise question of whether a statute is an enumerated basis for protection under SOX has been repeatedly litigated," Opp. 7, but omits that *none of the cases Plaintiff cites* found that it constitutes protected activity under SOX.

REPLY TO MOT. TO DISMISS AMEND. COMPL.  
(Case No. 23-cv-1887-RAJ) - 3

QUINN EMANUEL URQUHART & SULLIVAN, LLP  
1109 First Avenue, Suite 210  
Seattle, Washington 98101  
(206) 905-7000

specifically relate to one of the listed categories…under 18 U.S.C. § 1514A(a)(1)." 577 F.3d 989, 996–97 (9th Cir. 2009) (cleaned up) (emphasis added); *see also Neely v. Boeing Co.*, 2018 WL 2216093, at *4 (W.D. Wash. May 15, 2018) (dismissing SOX claim for failure to plead this element), *aff'd* 823 F. App'x 494, 496 (9th Cir. Aug. 12, 2020).  And as *Wadler v. Bio-Rad Laboratories, Inc.* made clear, "statutory provisions"—such as Section 13(r) itself—"are not 'rules or regulations of the SEC' under SOX." 916 F.3d 1176, 1187 (9th Cir. 2019).  Taking Plaintiff's theory to its logically absurd conclusion, he could plead that he "believed" a violation of the employee handbook constituted a violation of an SEC regulation and have a SOX claim.

*Third*, Plaintiff attempts to plead protected activity by referencing a vague "statutory and regulatory scheme related to corporate accounting, audit and financial controls." Opp. 6. Plaintiff's attempt to open the floodgates of SOX to any "accounting, audit and financial controls" issues contradicts the statute—which identifies specific laws—and binding precedent. *See* 18 U.S.C. § 1514A(a)(1); *Van Asdale*, 577 F.3d at 996-97.

*Fourth*, Plaintiff argues he "need not specifically identify specific rules and regulations when reporting concerns." Opp. 6.  That is true as to his *communications to Defendant at the time*. But *to state a claim* Plaintiff *must allege* his communications "definitively and specifically relate to one of the listed categories" in SOX. *Van Asdale*, 577 F.3d at 996-97 (cleaned up); *Neely*, 2018 WL 2216093, at *4.  He does not.

Finally, Plaintiff suggests that discovery may reveal activity protected under SOX. *See* Opp. 6, n.6.  But SOX requires reporting of what "the employee reasonably *believes*" at the time to be a violation, 18 U.S.C. § 1514A(a)(1) (emphasis added), not what Plaintiff can uncover after-the-fact, *see, e.g.*, *Brinker v. Axos Bank*, 2023 WL 4535529, at *8 (S.D. Cal. July 13, 2023) ("The Court will not parse through Plaintiff's pleading and tie her allegations and beliefs to specific authorities covered by § 1514A from a hindsight perspective; it is Plaintiff's obligation to plead and ultimately prove what she believed at the time she complained of the issues.").

**B. Plaintiff's Opposition Confirms That His SOX Claim Is Untimely**

Plaintiff's own words prove the untimeliness of his claim.

REPLY TO MOT. TO DISMISS AMEND. COMPL.
(Case No. 23-cv-1887-RAJ) - 4

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

In trying to rebut Defendant's argument that Plaintiff was on notice of the decision to terminate his employment in September 2021, including due to allegations he was cut off from all company resources, and his receipt of a separation agreement *that Plaintiff relies upon for his retaliation claim*, AC ¶¶ 36-39, Plaintiff now asserts his employment status was actually unclear, such that the statute of limitations was not triggered, Opp. 8-13.  But Plaintiff alleges that he "retain[ed] Korean legal counsel" who "outlin[ed]" Plaintiff's retaliation complaints in September 2021. AC ¶ 39; *see also id*. ¶ 43.  That letter could not be more clear that Plaintiff was on notice of the decision to terminate his employment. Dkt. 31-3 at 4 ("*we* consider [this] to be a constructive *termination*," and asserting Plaintiff could bring a SOX claim).[4]

Plaintiff's allegations that he remained an employee between September 2021 and January 2022 while Defendant conducted an investigation (Opp. 9-11) are immaterial.  What matters is "when the employee knew, or reasonably should have known, that the adverse employment decision had been made," *Clark v. Resistoflex Co.*, 854 F.2d 762, 765 (5th Cir. 1988), not whether Plaintiff remained an employee during an investigation into his (unfounded) allegations.

### C. Plaintiff Seeks Extraterritorial Application of SOX

Plaintiff acknowledges that "[t]he Ninth Circuit recently held SOX's anti-retaliation provisions do not apply extraterritorially."  Opp. 13.  Plaintiff nevertheless asserts that he alleged "sufficient domestic conduct" so as to make his a "domestic," and not extraterritorial, application of that law. *Id.*  Not so.

The Ninth Circuit's recent decision in *Daramola v. Oracle Am., Inc.* is controlling. 92 F.4th 833 (9th Cir. 2024).  In that case, the Circuit considered whether the "relevant conduct occurred in another country," so as to cause "an impermissible extraterritorial application" of SOX. *Id.* at 839 (citation omitted).  Contrary to Plaintiff's suggestion otherwise, Opp. 13-14, the Circuit

---

[4] The Court can consider this letter that is expressly incorporated into the AC, as explained in Coupang's Request for Judicial Notice ("RJN")  and reply to the same ("RJN Reply").  Plaintiff claims that this letter, which Plaintiff relies upon for his claims, and which was sent on Plaintiff's behalf by his own counsel, is "hearsay" that should be "disregarded." Opp. 9 & n.8; RJN Objs. The letter is not hearsay.  *See* RJN Reply.

confirmed that to survive Plaintiff "*must demonstrate* that *the locus* of his employment relationship"—"locus" translates from Latin as "place"—"*was 'in United States territory.*'" *Id*. at 840 (emphases added).  Because the *Daramola* plaintiff worked in Canada for a Canadian subsidiary of a U.S. parent company—even though the plaintiff's supervisors and customers were in the U.S.—the "locus" of his employment was in Canada, and SOX did not apply. *Id*.  In reaching this conclusion, *Daramola* relied upon *Garvey v. Administrative Review Board*, in which the D.C. Circuit denied the plaintiff's claim even though "his employer's parent entity was a U.S. company…the alleged fraud affected U.S. markets, and…the retaliation against him was allegedly orchestrated in the United States." *Id*. at 841 (citing 56 F.4th 110, 128 (D.C. Cir. 2022)).

Plaintiff tries to distinguish the circumstances in *Daramola*, arguing that because his employment agreement with Defendant's Delaware-incorporated predecessor had a California choice-of-law provision, his Korean-based assignment and employment had a U.S. "locus." Plaintiff also points to vague allegations that *some entity* related to Defendant "maintained" offices in the U.S., that Plaintiff "communicated" with someone employed by a U.S. affiliate, and that the "retaliatory decisions" were "made by and/or with the review and approval" of Washington and California individuals.  Opp. 14-16.  But under *Daramola*, this is not enough where Plaintiff alleges that "*at all relevant times*, *Plaintiff worked* on assignment in the offices of Defendant's wholly owned subsidiary, Coupang, Corp., *in Seoul, Korea*," AC ¶ 1 (emphasis added), *id*. Moreover, the alleged wrongful transactions were with a non-US embassy, Mot. 5, and the Assignment Agreement provided that "*[n]otwithstanding anything to the contrary in your Employment Agreement*, this Letter of Assignment and *the Assignment itself shall only be governed by and construed under the laws of the Republic of Korea*." Dkt. 31-1 at 10 (emphases added).[5]  Regardless, a California choice-of-law provision does not change the *place* of Plaintiff's employment.

---

[5] Plaintiff argues that the Assignment "provided only that Korean law would apply to compensation, housing, and other in-country issues." Opp. 15, n.10.  That is contrary to the plain language of the Assignment. Dkt. 31-1 at 10.  Regardless, Plaintiff does not attempt to show that

REPLY TO MOT. TO DISMISS AMEND. COMPL.
(Case No. 23-cv-1887-RAJ) - 6

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

Plaintiff's conclusory allegations "upon information and belief" that Seattle-based legal counsel Jim Roe was the "primary decisionmaker," that "Coupang employees" "involved in the decision to place Mr. Smith on leave, conduct an investigation…and to terminate him, were acting at the direction of other decision makers based in the United States," AC ¶ 54, and that attorneys based in California participated in the investigation, *id.* ¶¶ 41-43, do not save his claim.  Nor does the fact that Plaintiff "raise[d]" unspecified "issues" with an Assistant Corporate Secretary "in Coupang's California office," where the raising of "issues" is untethered to any alleged retaliation. *Id*. ¶ 31.  The Ninth Circuit in *Daramola* already recognized such connections are insufficient to shift the "locus" of employment to the U.S.  92 F.4th at 841 (citing *Garvey*, 56 F.4th at 128); *see also Ulrich v. Moody's Corp.*, 2014 WL 12776746, at *7 (S.D.N.Y. Mar. 31, 2014) (there is "no caselaw applying the anti-retaliation provisions of SOX…to a foreign resident working at a foreign subsidiary of an American corporation and alleging retaliation for protected activity occurring abroad, *even if the alleged retaliation did originate in the United States*" (emphasis added)).  And Plaintiff's improper group pleading—i.e., alleging actions attributable to an undefined "Coupang" entity in an effort to impute the Washington and California contacts of a separate subsidiary to Defendant, Opp. 16—cannot save Plaintiff's allegations.  Mot. 5.[6]  *See* Opp. 17 (providing no authority for his position that "Plaintiff need not specifically allege which Coupang entity employed each of these executives…at this stage").

Plaintiff's cited cases (Opp. 14) do not apply the "locus" test demanded by this Circuit, and illustrate the types of allegations he is missing.  *See O'Mahony v. Accenture, LTD.*, 537 F. Supp. 2d 506, 511 (S.D.N.Y. Feb. 5, 2008) (out-of-circuit case utilizing six-factor "conduct test," recognizing that the plaintiff "was employed and compensated by a United States subsidiary,"

---

a choice-of-law clause can change the "locus," i.e., the *place*, of his employment from Korea to California.

[6] As Plaintiff admits, Plaintiff's allegations that Coupang Global LLC was his employer and the predecessor entity to Defendant are false.  Dkt. 35.  Plaintiff does not contest that the Court should disregard these falsehoods when ruling on this Motion.

REPLY TO MOT. TO DISMISS AMEND. COMPL.
(Case No. 23-cv-1887-RAJ) - 7

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

"worked in the United States from 1984 through 1992," and the "whistleblowing" was for "alleged misconduct…in the United States"); *Blanchard v. Exelis Systems Corp.*, ALJ 2014-SOX-020, 2017 WL 3953474 (ARB Aug. 29, 2017) (not applying "locus" test, allowing SOX claim where plaintiff worked on U.S. military base); *Penesso v. LCC Int'l, Inc.*, ALJ 2005-SOX-00016, 2005 WL 4889018, at *3 (ALJ Mar. 4, 2005) (not applying "locus" test, allowing SOX claim where "much of the protected activity in this case took place in the United States").

## II. PLAINTIFF'S WASHINGTON CLAIM FAILS

### A. Plaintiff Fails to Plead a Clear Mandate of Washington Public Policy

Plaintiff asserts that SOX and Washington common law supply the requisite public policy for his wrongful termination claim under Washington law. Opp. 17-18. Not so.

*First*, Plaintiff asserts that simply because in a *single case* from *forty years ago* in a different context a federal statute was found to provide a clear mandate of Washington public policy, Opp. 17-18, this Court should be the first to hold that SOX does so. But "[a] clear mandate of public policy sufficient to meet the clarity element must be clear and truly public; *it does not exist merely because the plaintiff can point to legislation…that addresses the relevant issue*." Mot. 18 (quoting *Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC*, 171 Wash. 2d 736, 757 (2011) (emphasis added)). And Washington courts have rejected the notion that the mere existence of a federal statute establishes a "clear mandate" of Washington public policy. *Sedlacek v. Hillis*, 145 Wash. 2d 379, 389 (2001) ("Despite this court's acceptance of a federal statute as a source of public policy in *Thompson*, we cannot conclude that a clear mandate of public policy exists merely because the plaintiff can point to a potential source….").

*Second*, Plaintiff argues that anytime an employee alleges they were terminated for "whistleblowing," then they have established a clear mandate of Washington public policy under Washington common law. Opp. 18. ("Independent of SOX, the Washington Supreme Court has recognized a broad public policy of protecting whistleblowers."). Not so. Plaintiff's cited authority do not establish this "broad public policy" for any plaintiff incanting "whistleblower." *Karstetter v. King Cnty. Corrs. Guild*, 193 Wash. 2d 672, 677, 684-85 (2019) (addressing whether

REPLY TO MOT. TO DISMISS AMEND. COMPL.  
(Case No. 23-cv-1887-RAJ) - 8

QUINN EMANUEL URQUHART & SULLIVAN, LLP  
1109 First Avenue, Suite 210  
Seattle, Washington 98101  
(206) 905-7000

the attorney-plaintiff's "breach of contract and wrongful discharge claims are precluded by [attorney] ethical rules and should have been dismissed," not a broad "whistleblower" public policy); *Gardner v. Loomis Armored, Inc.*, 128 Wash. 2d 931, 938 (1996) (not a "whistleblower" case as it did "not fit neatly into either of the categories of cases previously considered by this court"). Rather, *Gardner* merely recognized that "tort actions have generally been allowed in four different situations," 128 Wash. 2d at 936; *Gardner* did not hold that every "whistleblower" claim involves Washington public policy. After listing the four situations, *Gardner* reiterated that an employee must "show[] the discharge may have contravened a clearly stated public policy." *Id*. (citation omitted).

*Third*, Plaintiff contends Defendant is "improperly heightening Plaintiff's burden," Opp. 19, but Defendant's point at issue cannot (seriously) be contested: "[t]he inquiry is 'whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme.'" Mot. 17 (quoting *Thompson v. St. Regis Paper Co.*, 102 Wash. 2d 219, 232 (1984)). The "conduct that purportedly gives rise to Plaintiff's claim"—and the lack of Washington connections supporting finding such a policy—must be considered as part of that analysis. *Id*. at 17-18 (citations omitted).

### B. Even if SOX Is a Clear Mandate of Washington Public Policy, Plaintiff Fails to State a Claim

Even it Plaintiff establishes SOX as a clear mandate of Washington public policy, his claim fails with his SOX claim, because in such circumstances *the public policy does not apply*. See Mot. 18-19.

Plaintiff attempts to refute this point by claiming that SOX "may provide a public policy mandate for purposes of a wrongful termination claim even where the employer's conduct is beyond the reach of the statute's remedies." Opp. 19 (quoting *Roe*, 171 Wash. 2d at 757). He then concludes (without citation) that Washington law "can provide a remedy even if he ultimately does not prevail on his SOX claims." Opp. 19. The Court should reject this *ipse dixit*; *none* of the cases Plaintiff cites suggest that this Court should find a Washington public policy based on SOX *in*

REPLY TO MOT. TO DISMISS AMEND. COMPL.  
(Case No. 23-cv-1887-RAJ) - 9

QUINN EMANUEL URQUHART & SULLIVAN, LLP  
1109 First Avenue, Suite 210  
Seattle, Washington 98101  
(206) 905-7000

*circumstances where SOX itself does not apply*. *See Roe*, 171 Wash. 2d at 756-57 (Washington law did "not proclaim a public policy prohibiting the discharge of an employee for medical marijuana use"); *Roberts v. Dudley*, 140 Wash. 2d 58, 66 (2000) (not a "whistleblower" case and based on a well-recognized Washington "policy of the highest priority…sex discrimination" as expressed in Washington statutes (citation omitted)); *Sedlacek*, 145 Wash. 2d at 390-91 (rejecting attempt to establish clear public policy where the relevant statute "creates no protection" for the individuals at issue). To properly invoke this general principle, the plaintiff must be protected under the relevant statute; Plaintiff is not. Mot. 19.

### C. Plaintiff Has Failed to Show Washington Law Applies

Plaintiff "invites this Court to be the first in Washington" to hold a non-Washington employee can bring a Washington common law wrongful termination claim. Opp. 20. This Court should decline Plaintiff's invitation.

Plaintiff points instead to a different *statute* that courts have determined, based on *statutory interpretation*, may apply to non-Washington employees of Washington companies in certain circumstances. Opp. 20-21 (citing *Burnside v. Simpson Paper Co.*, 123 Wash. 2d 93 (1994)). *Burnside* reasoned that failing to apply the statute extraterritorially "would effectively allow *Washington employers* to discriminate freely against non-Washington inhabitants, thus *undermining the fundamental purpose of the act*." 123 Wash. 2d at 99 (emphases added). Here, Plaintiff lived and worked in Korea under assignment to a Korean subsidiary, and *there was no Washington employer*—Defendant is incorporated in Delaware, and was headquartered in Korea at all relevant times. Mot. 6-7. Nor does Plaintiff proffer a statute to provide a "fundamental purpose."

The only alleged Washington connections Plaintiff points to are that a Seattle-based attorney oversaw an investigation by counsel in *a different* state, Opp. 20 (citing AC ¶¶ 41, 49), and that a *different subsidiary* (Coupang Global) opened offices, registered to do business, and had employees in Seattle, AC ¶¶ 15-16. In sum, given the dearth of meaningful connections to

REPLY TO MOT. TO DISMISS AMEND. COMPL.  
(Case No. 23-cv-1887-RAJ) - 10

QUINN EMANUEL URQUHART & SULLIVAN, LLP  
1109 First Avenue, Suite 210  
Seattle, Washington 98101  
(206) 905-7000

Washington and that this dispute did not involve a Washington employer or employee, this Court should not—for the first time—extend this claim to this foreign-based dispute.

### III. PLAINTIFF'S CALIFORNIA CLAIMS FAIL

#### A. Plaintiff's Covenant of Good Faith and Fair Dealing Claim Is Foreclosed

Plaintiff's claim for good faith and fair dealing is foreclosed.

Setting aside the competing choice-of-law provisions in the Employment Agreement (Californian) and Assignment Agreement (Korean), Plaintiff claims that Defendant "ignores" the law and "the actual thrust of Plaintiff's allegations." Opp. 22. Not so. It is black letter law that "[p]recisely because employment at will *allows* the employer freedom to terminate the relationship as it chooses, the employer does not frustrate the employee's contractual rights merely by doing so." *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 350 (2000). Plaintiff alleges that Defendant "deprived [him] of the benefits under his Employment Agreement by terminating his employment," AC ¶ 101, but such a deprivation of "contractual rights" is expressly permitted under *Guz*.

The cases Plaintiff cites (Opp. 22-24) recognize that if an employer terminates an employee as a pretext to avoid paying earned compensation, that may give rise to a claim. *See King v. U.S. Bank, NA*, 53 Cal. App. 5th 675, 706-07 (2020) ("[T]he covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned." (quoting *Guz*, 24 Cal. 4th at 353, n.18)); *Barker v. Stoli Grp. (USA), LLC*, 2022 WL 1811087, at *4 (E.D. Cal. June 2, 2022) ("[A] rational fact-finder could find that Stoli terminated Barker in a pretextual attempt to deprive him of a bonus it had told him he already earned."). Here, plaintiff does not allege that, but alleges his termination was a pretext to retaliate for whistleblowing. *See, e.g.*, AC ¶¶ 10, 28, 29, 33. But, for the reasons stated herein, he cannot state a claim for whistleblowing.

Plaintiff's request—in a footnote—for leave to amend to allege a breach of contract claim based on an Oregon case applying Oregon law, Opp. 23, n.15, should be denied as futile.

REPLY TO MOT. TO DISMISS AMEND. COMPL.  
(Case No. 23-cv-1887-RAJ) - 11

QUINN EMANUEL URQUHART & SULLIVAN, LLP  
1109 First Avenue, Suite 210  
Seattle, Washington 98101  
(206) 905-7000

### B. California Labor Law Does Not Apply Here

Plaintiff admits that if his Section 1102.5 and SOX claims fail, so too does his common law wrongful termination claim. Opp. 24-25.

But Plaintiff argues without support that his "Labor Code § 1102.5 claim survives because he adequately alleges protected activity in California and Defendant's connections to California." Opp. 24. Plaintiff's alleged California "activity" and Defendant's alleged "connections to California" are insufficient. Mot. 13-15. Plaintiff has simply not alleged that "a 'crucial element' of [his] claim…occurred in California." *English v. Gen. Dynamics Mission Sys., Inc.*, 808 F. App'x 529, 530 (9th Cir. June 9, 2020) (citation omitted)).

Plaintiff also conclusorily argues that this claim survives because "Defendant fails to cite a case holding § 1102.5 does not apply where, as here, Plaintiff's employment contract contained a California choice-of-law provision." Opp. 24. But the cases Defendant cited are clear: a choice-of-law provision cannot expand the geographical reach of California law. Mot. 15.

### CONCLUSION

For the reasons provided, the Court should grant Defendant's Motion and dismiss the AC with prejudice.

REPLY TO MOT. TO DISMISS AMEND. COMPL.
(Case No. 23-cv-1887-RAJ) - 12

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

DATED: April 19, 2024

/s/ Alicia Cobb
Alicia Cobb, WSBA #48685
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel.: (206) 905-7000
Fax: (206) 905-7100
aliciacobb@quinnemanuel.com

Randa A.F. Osman, *pro hac vice*
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Phone (213) 443-3000
Fax (213) 443-3100
randaosman@quinnemanuel.com

Ryan Swindall, *pro hac vice*
1200 Abernathy Road, Suite 1500
Atlanta, GA 30328
Phone (404) 482-3502
Fax (404) 681-8290
ryanswindall@quinnemanuel.com

*Attorneys for Defendant Coupang, Inc.*

REPLY TO MOT. TO DISMISS AMEND. COMPL.
(Case No. 23-cv-1887-RAJ) - 13

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

**LCR 7 CERTIFICATION**

I certify that this memorandum contains 4,193 words, in compliance with the 4,200 word limit set forth in Local Civil Rule 7.

DATED: April 19, 2024

/s/ Alicia Cobb
Alicia Cobb, WSBA #48685

REPLY TO MOT. TO DISMISS AMEND. COMPL.
(Case No. 23-cv-1887-RAJ) - 14

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 19, 2024, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which sent notification of such filing to counsel of record.

DATED April 19, 2024.

/s/  Alicia Cobb
Alicia Cobb, WSBA #48685

Reply to Mot. to Dismiss Amend. Compl.
(Case No. 23-cv-1887-RAJ) - 15

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000